[No. S022130. July 29, 1993.]

In re CHARLES HARRIS on Habeas Corpus.

## Counsel

Fern M. Laethem, State Public Defender, Michael Tanaka and Kent Barkhurst, Deputy State Public Defenders, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Marc E. Turchin and Stephen M. Kaufman, Deputy Attorneys General, for Respondent.

## Opinion

**LUCAS. C. J.**—Charles Harris was convicted of second degree murder (Pen. Code, §§ 187, 189; all further statutory references are to the Penal Code unless otherwise indicated), seven counts of attempted murder (§§ 664, 187), and two counts of robbery (§ 211).[1] He seeks a writ of habeas corpus, claiming, inter alia, that the superior court lacked subject matter jurisdiction over him because he had not attained the age of 16 at the time the offenses were committed. Although we conclude the superior court possessed subject matter jurisdiction, we find that, for other reasons, the writ should issue, but that petitioner's relief should be limited to a remand for a determination of a new disposition consistent with his status as a juvenile at the time of the crimes.

 *Facts*[2]

Petitioner was born on October 21, 1968. The homicide-related crimes for which he was convicted occurred on October 20, 1984, the day before his

---

[1] The two robbery counts were later reversed by the Court of Appeal. (See Discussion, *post.*)

[2] This matter comes to us on a petition for a writ of habeas corpus; accordingly, the trial record is not before us. Because "the return effectively admits the material factual allegations of the petition and traverse by not disputing them, we may resolve the issue without ordering an evidentiary hearing." (*In re Sixto* (1989) 48 Cal.3d 1247, 1252 [259 Cal.Rptr. 491, 774 P.2d 164].)

16th birthday. Unrelated robberies occurred on October 5, 1984. The People initially proceeded against petitioner in juvenile court, but sought a fitness hearing to have him tried as an adult. (See Welf. & Inst. Code, § 707.) Petitioner filed a motion prior to the fitness hearing and claimed he could not be tried as an adult because he was not "16 years of age or older" when the crimes were committed, as required by statute. (*Ibid.*) He made the same argument at the fitness hearing. The juvenile court found petitioner was unfit for trial as a juvenile and certified him to adult court. By so certifying petitioner, the juvenile court necessarily rejected his contention that the superior court lacked jurisdiction over him because he had not turned 16 years old at the time of the crime.

In superior court, petitioner was convicted of the charged crimes and sentenced to a term of 15 years to life plus a determinate term of 7 years, said term to be served in state prison. On appeal, he renewed the contention that the superior court lacked jurisdiction over him based on his age when the homicide-related crimes were committed. The Court of Appeal rejected the claim as to the murder and attempted murder counts and affirmed that part of the judgment. The appellate court reversed petitioner's two robbery convictions, however, because they were committed on October 5, 1984, and, thus, when petitioner was only fifteen years old. This court denied a petition for review on November 12, 1987. (*People* v. *Harris* (Aug. 28, 1987) B020567 [nonpub. opn.].)

Petitioner then filed the present petition for a writ of habeas corpus with this court, again raising the question of his age. We issued an order to show cause and directed the parties to address the following two questions: "(1) whether petitioner is entitled to raise the issue of his age in a petition for a writ of habeas corpus, such issue having been raised and rejected on direct appeal, and (2) whether petitioner had not yet attained the age of 16 at the time of his crime, thereby divesting the trial court of subject matter jurisdiction."

*Discussion*

A. *Availability of Relief on Habeas Corpus*

Petitioner contends the trial court that convicted him lacked subject matter jurisdiction over him because he was only 15 years old when the offenses were committed. Because he raised that precise issue on direct appeal, however, we must decide initially whether a writ of habeas corpus is available under these circumstances.

1. *The Waltreus Rule*

The right to file a petition for a writ of habeas corpus is guaranteed by the state Constitution (Cal. Const., art. I, § 11), and regulated by statute (§ 1473

et seq.). ■ Although there is no explicit legislative limitation on post-appeal petitions for the writ, this court developed one many years ago, declaring that as a general rule, "[h]abeas corpus will not serve as a second appeal." (*In re Foss* (1974) 10 Cal.3d 910, 930 [112 Cal.Rptr. 649, 519 P.2d 1073]; see also, *In re Terry* (1971) 4 Cal.3d 911, 927 [95 Cal.Rptr. 31, 484 P.2d 1375] [habeas corpus "ordinarily" will not serve as second appeal]; *In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001] [hereafter *Waltreus*] [same]; 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Extraordinary Writs, § 3346, p. 4150.) Accordingly, when a criminal defendant raises in a petition for a writ of habeas corpus an issue that was raised and rejected on direct appeal, this court usually has denied the petition summarily, citing *Waltreus, supra,* 62 Cal.2d 218. In that case, we noted the petitioner's arguments "were rejected on appeal, and habeas corpus ordinarily cannot serve as a second appeal." (*Id.* at p. 225.) By citing *Waltreus* in our summary denial orders, we have intended to communicate that because the issue was previously raised and rejected on direct appeal, and because the petitioner does not allege sufficient justification for the issue's renewal on habeas corpus, the issue is procedurally barred from being raised again.[3]

*Waltreus* in turn cites and relies on *In re Winchester* (1960) 53 Cal.2d 528 [2 Cal.Rptr. 296, 348 P.2d 904]. In that case, the petitioner was convicted of willfully failing to provide for his child; he was ultimately incarcerated for a probation violation. He unsuccessfully argued on appeal that the judgment should be overturned because three jurors were permitted by the bailiff to make unsupervised telephone calls during a break in deliberations. The petitioner also claimed a partisan atmosphere pervaded the courtroom during his trial. After the judgment was affirmed on appeal, he filed a petition for a writ of habeas corpus with this court, raising the same issues he raised on appeal.

Before addressing the merits, we explained the limited grounds for relief in such situations. "Habeas corpus has become a proper remedy in this state to collaterally attack a judgment of conviction which has been obtained in violation of fundamental constitutional rights. [Citations.] The denial of a fair and impartial trial amounts to a denial of due process of law [citation] and is a miscarriage of justice within the meaning of that phrase as used in section 4, article VI, of the Constitution of this state. [Citations.] Fundamental jurisdictional defects, like constitutional defects, do not become irremediable when a judgment of conviction becomes final, even after affirmance

---

[3]Much of the following discussion also applies to the so-called "*Dixon* rule," which generally prohibits raising an issue in a postappeal habeas corpus petition when that issue was not, but could have been, raised on appeal. (*In re Dixon* (1953) 41 Cal.2d 756 [264 P.2d 513] [hereafter *Dixon*].)

on appeal. [Citation.] However, the petitioner must show that the defect so fatally infected the regularity of the trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice. [Citation.]" (*In re Winchester, supra*, 53 Cal.2d at pp. 531-532.)

Although we thus held a habeas corpus petitioner could raise jurisdictional and constitutional issues to collaterally attack a final judgment, we further clarified that the grounds for obtaining relief were quite limited. We explained that the writ would not lie to review questions concerning the admissibility of evidence or to correct "mere errors of procedure," where the trial court acted within its jurisdiction. (*In re Winchester, supra*, 53 Cal.2d at p. 532.) Of particular importance to the present case, we opined that habeas corpus "will not lie ordinarily as a substitute for an appeal . . . nor as a second appeal." (*Ibid.*)

This latter rule is now firmly established and often repeated without much explication. (*In re Foss, supra*, 10 Cal.3d at p. 930; *In re Terry, supra*, 4 Cal.3d at p. 927; *Waltreus, supra*, 62 Cal.2d at p. 225; *In re Spears* (1984) 157 Cal.App.3d 1203, 1208 [204 Cal.Rptr. 333]; *In re Wagner* (1981) 119 Cal.App.3d 90, 102 [173 Cal.Rptr. 766].) As with many rules of law, multiple repetitions over time may tend to obscure the original purpose of the rule. (See *People v. Superior Court (Mendella)* (1983) 33 Cal.3d 754, 759 [191 Cal.Rptr. 1, 661 P.2d 1081], quoting *Hyde v. United States* (1912) 225 U.S. 347, 391 [56 L.Ed. 1114, 1135, 32 S.Ct. 793] (dis. opn. of Holmes, J.) [" 'ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis.' "].) With the large number of petitions for writs of habeas corpus filed in the courts of this state[4] and the concomitant burden on the judiciary to evaluate the hundreds of petitions ultimately barred on procedural grounds, it is important to reexamine and reiterate the purpose of the *Waltreus* rule.

A review of earlier cases reveals the *Waltreus* rule evolved from pronouncements that a litigant could not *forgo* a direct appeal in favor of seeking relief on habeas corpus. Thus, we explained that habeas corpus is not a "substitute for a writ of error" (*In re Bell* (1942) 19 Cal.2d 488, 492 [122 P.2d 22]), and that "It is well settled that a writ of habeas corpus

---

[4] There were 1,022 petitions for writs of habeas corpus in criminal matters filed with this court during the 1990-1991 fiscal year, an increase of 219 over the 803 such petitions in the 1988-1989 fiscal year. (Jud. Council of Cal., Ann. Rep. (1992) Jud. Statistics, Supreme Court, Summary of Filings and Dispositions, Original Proceedings, table 3, p. 10.) The number of criminal habeas corpus petitions filed in this state's superior courts is also substantial; 3,882 criminal habeas corpus petitions (and 5,469 other habeas corpus petitions) were filed in the superior courts in fiscal year 1990-1991. (*Id.*, Superior Courts, Non-Civil Filings and Dispositions, table 11, p. 59.)

ordinarily may not be employed as a substitute for an appeal." (*In re Byrnes* (1945) 26 Cal.2d 824, 827 [161 P.2d 376]; see also *In re Seeley* (1946) 29 Cal.2d 294, 296 [176 P.2d 24] [habeas corpus generally unavailable where there exists a remedy by appeal]; 36 Cal.Jur.3d, Habeas Corpus, § 6, p. 11 [same].)

The wisdom of the judicially created *Waltreus* rule is manifest: the Legislature has established an elaborate appellate system in which a criminal defendant may present his or her claims for relief from alleged trial court errors. (§§ 1235-1265 [Appeals from Superior Courts]; Cal. Rules of Court, tit. 1, div. 1, rules 1-80 [Rules Relating to the Supreme Court and Courts of Appeal]; see also Cal. Const., art. VI, § 11 [with the exception of capital cases, "courts of appeal have appellate jurisdiction when superior courts have original jurisdiction"].) It thus appears that when a criminal defendant believes an error was made in his trial that justifies reversal of his conviction, the Legislature intends that he should appeal to gain relief. The *Waltreus* rule, although of judicial creation, is consistent with this legislative intent.

Two examples illustrate the point. ■ The California Rules of Court provide that an appellate court on direct appeal be provided with a record of the trial proceedings sufficient to rule on an appellant's claim. (Cal. Rules of Court, rules 33-36 [specifying the content of the record on criminal appeal].) Failure to provide for the timely preparation of the record on appeal will result in dismissal. (Cal. Rules of Court, rules 10(c) [dismissal rule] and 30 [applying civil rules to criminal cases unless "express provision is made to the contrary"]; *Constantelos* v. *Rice* (1954) 123 Cal.App.2d 765, 766 [267 P.2d 375].) By contrast, one seeking relief on habeas corpus need only file a petition for the writ alleging facts which, if true, would entitle the petitioner to relief. (See *In re Clark, ante*, p. 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] [hereafter *Clark*]; see also § 1474 [applicant need only allege he is illegally restrained of his liberty, and state "in what the alleged illegality consists"].)[5]

In addition, fairness to the prevailing party at trial requires the losing side to prosecute an appeal in timely fashion. (See Cal. Rules of Court, rules 2 [time for filing appeal] and 30.) Failure to file a notice of appeal in timely fashion is fatal and requires dismissal of the appeal. (See Cal. Rules of Court, rule 31(a); *People* v. *McBride* (1953) 122 Cal.App.2d 409 [264 P.2d 991] [case dismissed under rule 31(a)]; but see *People* v. *Chapman* (1971) 5 Cal.3d 218, 225 [95 Cal.Rptr. 533, 485 P.2d 1149] [" 'Doubts should be resolved in favor of the right to appeal.' "]; *Vibert* v. *Berger* (1966) 64 Cal.2d

---

[5]Such factual allegations should also be supported by "[reasonably available] documentary evidence and/or affidavits." (*Clark, supra, ante*, at p. 781, fn. 16.)

65, 67 [48 Cal.Rptr. 886, 410 P.2d 390] [civil case].) By contrast, a petitioner seeking relief on habeas corpus need only file a petition without substantial delay, or, if delayed, adequately explain the delay. (*Clark, supra, ante,* at p. 783; *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793]; cf. Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3, stds. 1-1 to 1-3 [defining "substantial delay" for filing habeas corpus petitions in capital cases].)

 Habeas corpus may thus provide an avenue of relief to those unjustly incarcerated when the normal method of relief—i.e., direct appeal —is inadequate.[6] Unlike review on direct appeal, habeas corpus does not simply inquire into the correctness of the trial court's judgment. The scope of habeas corpus is more limited. Although the writ of habeas corpus is directed against the custodian of one who is illegally confined, it will reach out to correct errors of a fundamental jurisdictional or constitutional type only. (*In re Winchester, supra,* 53 Cal.2d at p. 531.) The specialized nature of the remedy itself compels the conclusion that—absent unusual circumstances—the aggrieved party should first appeal before resorting to habeas corpus.[7] In this way, habeas corpus is preserved as an avenue of relief to those for whom the standard appellate system failed to operate properly.

[6] " '[H]abeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside . . . and although every form may have been preserved opens the inquiry whether they have been more than an empty shell.' " (*Frank* v. *Mangum* (1915) 237 U.S. 309, 346 [59 L.Ed. 969, 988, 35 S.Ct. 582] (dis. opn. by Holmes, J.), quoted in *Harris* v. *Nelson* (1969) 394 U.S. 286, 291, fn. 2 [22 L.Ed.2d 281, 286, 89 S.Ct. 1082], original italics omitted.)

[7] This rule does not, of course, apply to issues that could not be raised on appeal because they are based on matters outside the appellate record. In such cases, the *Waltreus* rule is not implicated. Instead, such cases are subject to the general rule regarding timeliness: the habeas corpus petition must be filed within a reasonable time after the petitioner or counsel knew, or with due diligence should have known, the facts underlying the claim as well as the legal basis of the claim. (See *Clark, supra, ante,* at p. 784.)

Moreover, in such cases, the habeas corpus petition should be filed in conjunction with the direct appeal. (See *People* v. *Pope* (1979) 23 Cal.3d 412, 426-427, fn. 17 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1] [appellants claiming ineffective assistance of counsel "should join a verified petition for habeas corpus" with the appeal]; see also Cal. Rules of Court, rule 24(a), 3d par. [discussing finality rules for habeas corpus petitions filed with appeals].)

Due to the unusual circumstances present in capital cases, however, the court has a special rule for such cases. (See *Clark, supra, ante,* at p. 784 [complexity of capital cases and the resultant difficulties involved justify different timeliness rules for capital cases].) Thus, a petition for habeas corpus in a capital case filed within 90 days of the final due date for the filing of appellant's reply brief is presumed to be filed without substantial delay. (See Supreme Court Policies Regarding Cases Arising From Judgments of Death, Policy 3, std. 1-1.1.)

When the issue relies, as here, solely on facts in the appellate record, a defendant (both capital and noncapital) acts reasonably by first raising the issue on appeal, and, if unsuccessful, renewing the issue in timely fashion on habeas corpus. As discussed, *post,* however, such an issue must come within an exception to the *Waltreus* rule.

Proper appellate procedure thus demands that, absent strong justification, issues that could be raised on appeal must initially be so presented, and not on habeas corpus in the first instance. Accordingly, an unjustified failure to present an issue on appeal will generally preclude its consideration in a postconviction petition for a writ of habeas corpus. (*Dixon, supra*, 41 Cal.2d 756.) "[H]abeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors *could have been, but were not*, raised upon a timely appeal from a judgment . . . ." (*Id.* at p. 759, italics added; *In re Bower* (1985) 38 Cal.3d 865, 872 [215 Cal.Rptr. 267, 700 P.2d 1269]; *In re Smith* (1911) 161 Cal. 208 [118 P. 710]; see also, *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865 [245 Cal.Rptr. 1, 750 P.2d 778] [applying same rule in adoption-related matter].)

■ The corollary of the rule in *Dixon, supra*, 41 Cal.2d 756, is, of course, the *Waltreus* rule, i.e., that in the absence of strong justification, any issue that was *actually* raised and rejected on appeal cannot be renewed in a petition for a writ of habeas corpus. Courts will thus presume that the elaborate appellate system established by the state Constitution and the Legislature was sufficient to allow a person to present adequately his or her grievances for judicial review. (See *In re Sterling* (1965) 63 Cal.2d 486, 488-489 [47 Cal.Rptr. 205, 407 P.2d 5].)

Petitioner recognizes the force of the *Waltreus* rule and admits he unsuccessfully raised the issue of his age on appeal. Nevertheless, he contends he may renew his claim in a postconviction petition for a writ of habeas corpus because his case falls within recognized exceptions to the *Waltreus* rule. We thus turn to an examination of limited situations in which a petitioner may renew a claim on habeas corpus despite denial of the claim on direct appeal.

2. *Exceptions to the Waltreus Rule*

A number of exceptions to the *Waltreus* rule have developed over the years. Because some of them may apply to petitioner's case, we treat the question in some depth in order to provide needed guidance to the bench and bar.

a. *Fundamental Constitutional Error*

In years past, we have recognized an exception to the *Waltreus* rule when the habeas corpus petitioner claims a violation of his or her fundamental constitutional rights. Thus, in *In re Winchester, supra*, 53 Cal.2d 528, we opined that "Habeas corpus has become a proper remedy in this state to

collaterally attack a judgment of conviction which has been obtained in violation of fundamental constitutional rights." (*Id.* at p. 531; cf. *Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 343 [64 L.Ed.2d 333, 343, 100 S.Ct. 1708] [federal rule permits state prisoner to seek habeas relief in federal court if he alleges he is in custody in violation of federal Constitution]; 28 U.S.C. § 2254(a) [same].) Past cases have thus permitted a habeas corpus petitioner to renew a claim of fundamental constitutional error that has previously been rejected on appeal.

We emphasize, however, that no statutory requirement directs us to permit relitigation of certain issues in a postconviction petition for a writ of habeas corpus where the matter has been duly considered on appeal. Rather, the judicially created *Waltreus* rule, and the similarly created exceptions to the rule, are simply manifestations of this court's resolve to balance the state's weighty interest in the finality of judgments in criminal cases with the individual's right—also significant—to a fair trial under both the state and federal Constitutions.

How to achieve the proper balance has not, however, always been clear. Certainly not all alleged constitutional defects warrant the opportunity to relitigate the issue on habeas corpus. ■ Thus, for example, the question whether evidence was admitted at trial in violation of the Fourth Amendment is not cognizable on habeas corpus. (*In re Sterling, supra,* 63 Cal.2d at p. 487; *In re Lessard* (1965) 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39]; see also *Stone* v. *Powell* (1976) 428 U.S. 465 [49 L.Ed.2d 1067, 96 S.Ct. 3037] [same rule in federal court].) Chief Justice Traynor supplied the rationale for the court in *In re Sterling, supra:* " 'If the violation of a petitioner's constitutional rights by the use of illegally seized evidence had any bearing on the issue of his guilt, there should be no doubt that habeas corpus would be available. *Unlike the denial of the right to counsel,* the knowing use of perjured testimony or suppression of evidence, [or] the use of an involuntary confession, . . . the use of illegally seized evidence *carries with it no risk of convicting an innocent person.* The purpose of the exclusionary rule is not to prevent the conviction of the innocent, but to deter unconstitutional methods of law enforcement. [Citations.] That purpose is adequately served when a state provides an orderly procedure for raising the question of illegally obtained evidence at or before trial and on appeal. The risk that the deterrent effect of the rule will be compromised by an occasional erroneous decision refusing to apply it is far outweighed by the disruption of the orderly administration of justice that would ensue if the issue could be relitigated over and over again on collateral attack.' " (*In re Sterling, supra,* 63 Cal.2d at pp. 487-488, italics added, quoting *In re Harris* (1961) 56 Cal.2d 879, 883-884 [16 Cal.Rptr. 889, 366 P.2d 305] (conc. opn. of Traynor, J.).)

Just as obviously, we would be remiss were we to "close the door" completely, ignoring the legitimate arguments of habeas corpus litigants who claim that their bedrock constitutional rights have been trampled by the state. For example, in *In re Masching* (1953) 41 Cal.2d 530 [261 P.2d 251], the defendant was convicted of misdemeanor drunk driving. On appeal, he argued he was unconstitutionally deprived of his right to counsel; indeed, no counsel had been appointed although the defendant never waived his right to counsel. The appellate department affirmed his conviction and Masching filed a petition for a writ of habeas corpus with this court. We held the issue was cognizable in a postappeal habeas corpus petition to permit the petitioner to vindicate "a fundamental right guaranteed by our Constitution," i.e., the right to counsel. (*Id.* at p. 532.)

It is between these polar extremes that a line must be drawn. We begin with the state's powerful interest in the finality of its judgments. ▋ This interest is particularly strong in criminal cases, for "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." (*Teague v. Lane* (1989) 489 U.S. 288, 309 [103 L.Ed.2d 334, 355, 109 S.Ct. 1060] (plur. opn. by O'Connor, J.); see also *Clark, supra, ante,* at p. 766; *In re McInturff* (1951) 37 Cal.2d 876, 880 [236 P.2d 574]; cf. *Adoption of Alexander S., supra,* 44 Cal.3d at p. 868 [state's interest in finality in child-custody disputes is "unusually strong" in view of the importance of a stable child-parent relationship].)

We thus agree wholeheartedly with Justice Harlan's trenchant comment that " 'No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.' " (*Mackey v. United States* (1971) 401 U.S. 667, 691 [28 L.Ed.2d 404, 419, 91 S.Ct. 1160] (Harlan, J., conc. in part and dis. in part), quoted in *Teague v. Lane, supra,* 489 U.S. at p. 309 [103 L.Ed.2d at p. 355].) Clearly, the state and society have an interest in having the matter settled once and for all.

Balanced against this strong interest is the interest an individual has in vindicating his or her constitutional rights. In the past, we balanced the two interests by declaring that the opportunity for a third judicial review (trial, appeal, postappeal habeas corpus) of a claim was appropriate only where the litigant made a colorable showing that a "fundamental" constitutional right was violated. Thus, we explained that a constitutional issue would not be cognizable on a postappeal petition for a writ of habeas corpus unless the petition could show "the defect so fatally infected the regularity of the trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice." (*In re Winchester, supra,* 53 Cal.2d at p. 532.)

This formulation permitted criminal defendants to gain a degree of post-conviction, postappeal review for important constitutional violations that, for one reason or another, had gone unremedied. The inability of criminal defendants to gain vindication of their constitutional claims in the appellate courts, especially those claims affecting the ultimate fairness of their trials, justified an exception to the *Waltreus* rule for claims of "fundamental" constitutional error. Implicitly, this court found that in balancing the need for such review with the state's need for finality of judgments, the individual's need was the greater one.

Although maintaining an avenue to permit the presentation of legitimately significant constitutional claims remains important today, the modern development of the doctrine of ineffective assistance of counsel may diminish the need to retain such a broad "fundamental constitutional error" exception to the *Waltreus* rule. As we explained in *People v. Pope, supra*, 23 Cal.3d at pages 421-426 [hereafter *Pope*], the right to effective counsel was initially defined in terms of the due process clause of the federal Constitution. Thus, we initially held that in order for a litigant to obtain relief for ineffective assistance of counsel, " '[i]t must appear that counsel's lack of diligence or competence reduced the trial to a "farce or a sham." ' [Citations.]" (*Pope, supra*, at p. 421, quoting *People v. Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

The "farce or sham" standard gave way to the modern view, based on the Sixth Amendment, that in order to gain relief for ineffective assistance of counsel, a litigant "must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates [and that] counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense." (*Pope, supra*, 23 Cal.3d at p. 425.)

This modern standard is now well established in both this state and in the federal courts. ■ We recently summarized the law in *People v. Wharton* (1991) 53 Cal.3d 522 [280 Cal.Rptr. 631, 809 P.2d 290]: "A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) 'Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance.' (*People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839], italics in original.) In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674, 793, 104 S.Ct. 2052]; *Pope, supra*, 23 Cal.3d

at pp. 423-425.) Second, he must also show prejudice flowing from counsel's performance or lack thereof. (*Strickland, supra*, at pp. 691-692 [80 L.Ed.2d at pp. 695-696].) Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' (*In re Sixto*[, *supra*,] 48 Cal.3d [at p.] 1257; *Strickland, supra*, at p. 694.)" (*People v. Wharton, supra*, at p. 575.) The United States Supreme Court recently explained that this second prong of the *Strickland* test is not solely one of outcome determination. Instead, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." (*Lockhart* v. *Fretwell* (1993) 506 U.S. ___, ___ [122 L.Ed.2d 180, 191, 113 S.Ct. 838].)

Similar concepts have been used to measure the performance of appellate counsel. (*In re Banks* (1971) 4 Cal.3d 337, 343 [93 Cal.Rptr. 591, 482 P.2d 215]; *In re Smith* (1970) 3 Cal.3d 192, 202 [90 Cal.Rptr. 1, 474 P.2d 969] [inexcusable failure of appellate counsel to raise crucial assignments of error that arguably could have resulted in reversal deprived defendant of effective assistance of appellate counsel].)

Since its inception, this court has applied the standard in numerous cases. Recently, we reversed a judgment imposing the death penalty, where the record showed a defendant's trial counsel had not adequately investigated evidence for the penalty phase of the trial, thereby depriving the defendant of his Sixth Amendment right to counsel. (*In re Marquez* (1992) 1 Cal.4th 584 [3 Cal.Rptr.2d 727, 822 P.2d 435].) Similarly, we vacated the entire judgment of conviction in a case where the record showed the trial attorney had not adequately investigated the evidence of the defendant's diminished capacity. (*In re Sixto, supra*, 48 Cal.3d 1247.) And, most recently, we vacated both the guilt and penalty judgments for ineffective assistance of counsel for failing to object to statements elicited from the defendant in violation of his rights as established in *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]. (*In re Wilson* (1992) 3 Cal.4th 945 [13 Cal.Rptr.2d 269, 838 P.2d 1222].)

Experience with recent cases reveals that in the vast majority of cases, claims of "fundamental" constitutional error come to this court clothed in "ineffective assistance of counsel" raiment. Indeed, approaching the issue in this manner is apparently a conscious choice among litigants, possibly because it frees the litigant from having to demonstrate that the underlying issue is one involving "fundamental aspects of fairness . . . result[ing] in a miscarriage of justice." (*In re Winchester, supra*, 53 Cal.2d at p. 532.) So

long as it can be demonstrated that one's attorney acted unreasonably in doing or omitting to do something, courts will move on to the question of prejudice.

By recounting this history, we do not intend to question the wisdom of the evolution of the doctrine of ineffective assistance of counsel. Given its existence, however, we do question the necessity of maintaining a wide-ranging "fundamental constitutional rights" exception to the *Waltreus* rule. Presumably most erroneous deprivations of an accused's constitutional rights that occur at trial will be corrected on appeal. Many that are not corrected on appeal are the result of the ineffective assistance of either trial or appellate counsel. As such, those claims would be cognizable in a postappeal habeas corpus petition under the ineffective counsel rubric, and there would be no need to resort to the amorphous, ill-defined "fundamental constitutional rights" exception.

■ Balanced against the state's considerable interest in ensuring the finality of its criminal judgments, we conclude that the "fundamental constitutional rights" exception to the *Waltreus* rule, discussed in *In re Winchester, supra*, 53 Cal.2d 528, and invoked in subsequent cases, is inappropriately broad. Instead, a narrower exception, one that accounts for the evolution of the ineffective assistance of counsel doctrine and its provision for increased postappeal cognizability of constitutional issues, more appropriately reflects the proper balance between the state's interest in finality and the individual's interest in vindicating his or her constitutional rights.

Thus, courts will presume that a litigant received sufficient review of his or her legal claims, both constitutional and otherwise, on direct appeal. Where an issue was available on direct appeal, the mere assertion that one has been denied a "fundamental" constitutional right can no longer justify a postconviction, postappeal collateral attack, especially when the possibility exists of raising the issue via the ineffective assistance of counsel doctrine. Only where the claimed constitutional error is both clear and fundamental, and strikes at the heart of the trial process, is an opportunity for a third chance at judicial review (trial, appeal, postappeal habeas corpus) justified. (Cf. *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 309 [113 L.Ed.2d 302, 331, 111 S.Ct. 1246] [only errors amounting to a structural defect in the trial mechanism are deserving of automatic reversal rule] (maj. opn. by Rehnquist, C. J.).)[8] The state's paramount interest in the finality of its criminal judgments demands no less.

---

[8] Of course, where a habeas corpus petitioner's claim depends on facts that were not, and could not have been, placed in the record, the *Waltreus* rule does not apply, since the petitioner could not have raised the issue on direct appeal. Where the facts could have been,

We thus turn to petitioner's arguments that his case falls outside the *Waltreus* rule. He claims that because he was only 15 years old when he committed his crimes, the superior court that tried him lacked jurisdiction over him, and his trial therefore denied him 2 of his fundamental constitutional rights. He first contends his trial in adult court when he was only 15 years of age violated his due process right to a fair trial. Contrary to petitioner's argument, we see nothing that undermined the relative "fairness" of petitioner's trial. As petitioner was tried in adult court, he was simply the beneficiary of an additional procedural option—trial by jury—that was not available in juvenile court. We note that many states permit juveniles less than 16 years old to be tried as adults (see, e.g., *State* v. *Thieszen* (1989) 232 Neb. 952 [442 N.W.2d 887] [15-year-old tried for murder]; *People* v. *Sanchez* (1987) 129 A.D. 816 [513 N.Y.S.2d 521] [15-year-old tried for robbery]; *Ashing* v. *State* (1986) 288 Ark. 75 [702 S.W.2d 20] [14-year-old tried for murder]; *Winters* v. *State* (Miss. 1985) 473 So.2d 452 [15-year-old tried for rape]), and our research has not revealed that such treatment per se violates the due process clause of the Fourteenth Amendment.

Petitioner also argues his right to due process was violated because he was not tried in a court of "competent" jurisdiction. In support, he cites *Ex parte Giambonini* (1897) 117 Cal. 573 [49 P. 732]. In that case, this court held the police court that tried the defendant had been unconstitutionally constituted and therefore we granted habeas corpus relief. *Giambonini* is inapposite inasmuch as petitioner makes no claim that the superior court that tried him was unconstitutionally constituted. (Cf. *In re Horton* (1991) 54 Cal.3d 82 [284 Cal.Rptr. 305, 813 P.2d 1335] [defendant claimed he was denied fundamental right to trial by regularly elected or appointed superior court judge when he was tried by court commissioner].) Inasmuch as the superior court had jurisdiction over felony trials and was properly constituted, it was a competent court.[9]

 Petitioner also suggests his trial in adult court denied him equal protection of the laws because other offenders of his age are tried only by the juvenile court. We reject the suggestion that he has been denied a fundamental constitutional right sufficient to come within the narrow exception to the *Waltreus* rule. First, to the extent he is claiming he is the victim of a discriminatory prosecution (see *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 296 [124 Cal.Rptr. 204, 540 P.2d 44]), we note there is nothing in the

but were not, placed on the record, a potential claim for ineffective assistance of counsel may exist.

[9]Both of petitioner's first two due process claims (denial of a fair trial, denial of a properly constituted court) are distinct from the claim, considered *post*, that the trial court acted in excess of its jurisdiction.

record supporting such a claim.[10] Second, we reject petitioner's claim that the trial court used an irrational method to calculate his age. It does not violate equal protection principles for the Legislature to draw a line at age 16 for purposes of distinguishing between adults and juveniles where, as here, it has a rational basis for doing so. (See *Massachusetts Bd. of Retirement v. Murgia* (1976) 427 U.S. 307, 313-315 [49 L.Ed.2d 520, 524-526, 96 S.Ct. 2562].)

Inasmuch as petitioner fails to establish a due process or equal protection violation, we need not decide whether such violations, if shown, would fall within the "fundamental constitutional error" exception to the *Waltreus* rule. We recognize the possibility that in rare situations, there may be some clear and fundamental constitutional violation striking at the heart of the trial process that should have been raised or was unsuccessfully raised on appeal, and that cannot be remedied by resort to the doctrine of ineffective assistance of counsel. Such a fundamental breakdown in the appellate process may present an exception to the *Waltreus* rule. We need not now define the exact boundaries of any such surviving exception, for petitioner has not demonstrated he falls within its perimeter.

### b. *Lack of Fundamental Jurisdiction*

Historically, habeas corpus provided an avenue of relief for only those criminal defendants confined by a judgment of a court that lacked fundamental jurisdiction, that is, jurisdiction over the person or subject matter. (See *Ex parte Long* (1896) 114 Cal. 159 [45 P. 1057].) ▆▆▆ Although this strict jurisdictional view of habeas corpus has changed over the years, it is clear that a true lack of fundamental jurisdiction in the strict sense of the phrase results in a void judgment, for the court was entirely without power over the subject matter or the parties. (See *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 66 [2 Cal.Rptr.2d 389, 820 P.2d 613]; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) A judgment rendered by a court wholly lacking jurisdiction may be challenged at any time. Petitioner asserts his case comes within this "classic" exception to the *Waltreus* rule. As we explain, we conclude the trial

---

[10]We also reject the claim that the law was unconstitutionally vague because it invested prosecutorial authorities with inordinate discretion in calculating his age. Petitioner cannot justifiably claim he lacked sufficient notice that his conduct—one count of second degree murder, seven counts of attempted murder—was prohibited. (See *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 389-390 [250 Cal.Rptr. 515, 758 P.2d 1046] [discussing the lack of notice issue].) Moreover, that appellate courts have differed in their interpretation of Civil Code section 26 is not necessarily equivalent to a finding that the statute lacked adequate guidelines in the constitutional sense.

court possessed subject matter jurisdiction in this case. Accordingly, we reject the notion that *Waltreus* is inapplicable to his case on this theory.[11]

■ Petitioner contends that because he was not yet 16 years old on the day the crimes were committed, the juvenile court had *exclusive* jurisdiction over the offenses. "[T]he Welfare and Institutions Code provides that the juvenile courts exercise exclusive jurisdiction over all minors under the age of 16; these children cannot otherwise be tried as criminal offenders." (*In re Gladys R.* (1970) 1 Cal.3d 855, 862 [83 Cal.Rptr. 671, 464 P.2d 127]; see *In re James G.* (1985) 165 Cal.App.3d 462, 466 [211 Cal.Rptr. 611].) Welfare and Institutions Code section 707 also suggests as much; by providing that minors between 16 and 18 years old may be found unfit to be tried as juveniles and therefore tried as adults, that section implies by negative inference that those under 16 years of age cannot be so tried.

Nevertheless, even if we assume petitioner did not turn 16 years old until his 16th birthday (see discussion, *post*, p. 844 et seq.), his assertion that the superior court lacked subject matter jurisdiction to try him under general, adult law is incorrect. Whether a case should proceed in juvenile or adult court "does not involve an issue of subject matter jurisdiction." (*People* v. *Nguyen* (1990) 222 Cal.App.3d 1612, 1619 [272 Cal.Rptr. 523].) There is but one superior court in a county, though it is divided into different departments. (See 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 184, pp. 208-209.) Because petitioner was charged with a felony, the superior court had subject matter jurisdiction. If he was under 16 years of age, however, the criminal department of the superior court lacked jurisdiction *to act*, and its trial of petitioner thus constituted *an excess* of jurisdiction, not a lack of fundamental jurisdiction. (See *id.*, Courts, § 185 at pp. 209-210.)

Because a lack of fundamental jurisdiction may not be waived, this view is consistent with the many cases holding that the right to trial in the proper department of the superior court may be waived. "[I]t is well settled that a

[11]We are aware that language in *In re Carmen* (1957) 48 Cal.2d 851 [313 P.2d 817], suggests that failure to raise the issue of the trial court's fundamental jurisdiction precludes a later collateral attack on that ground. (*Id.* at p. 855.) That case is distinguishable, however, for two reasons. First, petitioner Harris raised the issue of his age and the trial court's jurisdiction below. Second, the *Carmen* court's pronouncement regarding the cognizability of the issue on collateral attack is dictum inasmuch as that court ultimately denied relief based on the now-discredited proposition that a habeas corpus petitioner "may not contest . . . the trial court's determination and exercise of jurisdiction, upon the basis of new and additional facts which do not appear in the trial court record." (*Id.* at p. 853; see also *id.* at p. 859.) Habeas corpus "has embraced the entire course of the proceedings, including additional evidence taken either directly or under an order of reference. [Citations.]" (*In re Jackson* (1964) 61 Cal.2d 500, 503 [39 Cal.Rptr. 220, 393 P.2d 420].) Accordingly, we conclude *Carmen*, *supra*, does not control this case.

person who is eligible to have his or her case proceed in juvenile court may waive this right either knowingly, or by failing to timely and properly raise the matter." (*People* v. *Nguyen, supra,* 222 Cal.App.3d at p. 1620.) Of course, if the superior court lacked subject matter jurisdiction over such a case, no waiver of the right to proceed in juvenile court could ever be effective.

This general rule applies in cases, as here, when the accused fails to timely object, on the basis of his or her age, to the adult court's assumption of jurisdiction. For example, in *People* v. *Oxnam* (1915) 170 Cal. 211 [149 P. 165], overruled on other grounds in *In re Ramon M.* (1978) 22 Cal.3d 419, 429 [149 Cal.Rptr. 387, 584 P.2d 524], footnote 12, this court, interpreting the predecessor Juvenile Court Act, held the accused's failure to raise the matter of his age prior to his appeal foreclosed the argument on appeal that he was too young to be tried in adult court. (*People* v. *Oxnam, supra,* at pp. 219-220.)

*People* v. *Navarro* (1963) 212 Cal.App.2d 299 [27 Cal.Rptr. 716] is to the same effect. In that case, the defendant raised, for the first time on appeal, the claim that he was only 17 at the time of the crime. The Court of Appeal rejected the claim, explaining that "[i]f in fact he was under 18 years of age, it was his duty or the duty of his attorney to call this fact to the attention of the court, and failure to do so is a waiver of any rights thus granted." (*Id.* at p. 303.)

It follows the superior court did not lack subject matter jurisdiction over petitioner, and he is not excepted from the *Waltreus* rule on that ground.

### c. *Acting in Excess of Jurisdiction*

As discussed above, the narrow view that habeas corpus addressed only strict jurisdictional issues has changed over the years. ██ "California decisions make clear that the concept of fundamental jurisdictional error, for the purpose of a writ of habeas corpus, is no longer strictly limited to cases in which the trial court wholly lacks jurisdiction over the person of the defendant or the subject matter of the proceeding; the concept encompasses any error of sufficient magnitude that the trial court may be said to have acted *in excess of jurisdiction.*" (*In re Sands* (1977) 18 Cal.3d 851, 856-857 [135 Cal.Rptr. 777, 558 P.2d 863], italics added.)[12] As we explained in *In re Zerbe* (1964) 60 Cal.2d 666 [36 Cal.Rptr. 286, 388 P.2d 182]: "Habeas corpus is available in cases where the court has acted in excess of its

---

[12]Past cases have also called this a "fundamental jurisdictional defect." Because this term is quite similar to the phrase "fundamental jurisdiction," we choose to use the less confusing

jurisdiction. [Citations.] For purposes of [the writ of habeas corpus], the term 'jurisdiction' is not limited to its fundamental meaning, and in such proceedings judicial acts may be restrained or annulled if determined to be in excess of the court's powers as defined by constitutional provision, statute, or rules developed by courts." (*Id.* at pp. 667-668.) This view is consistent with the statutory scheme governing habeas corpus, which provides that a prisoner may be discharged from custody "When the jurisdiction of [the committing] court . . . *has been exceeded.*" (§ 1487, subd. 1, italics added.)

This aspect of habeas corpus jurisprudence has been invoked in the past by this court to review claims that a criminal defendant was sentenced to serve an illegal sentence. Thus, for example, where a defendant was sentenced to an indeterminate term when the law provided for a determinate term, habeas corpus was available. (*In re Lee* (1918) 177 Cal. 690 [171 P. 958].) The writ was likewise available to review a claim that the sentencing court acted in excess of its jurisdiction by imposing a sentence on the petitioner that was longer than that permitted by law. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 16-17 [9 Cal.Rptr. 607, 357 P.2d 839]; see also *In re Estrada* (1965) 63 Cal.2d 740, 750 [48 Cal.Rptr. 172, 408 P.2d 948] [denial of parole consideration based on wrong statute].)

More recently, we confronted a habeas corpus petitioner who claimed that, being a mentally disordered sex offender formerly confined in a treatment center, he was entitled to conduct or participation credits against a subsequent prison term for time spent in the center. The trial court denied the credits and the Court of Appeal affirmed that judgment. Although we ultimately rejected the substantive claim, we concluded the petitioner was entitled to renew the issue in a petition for a writ of habeas corpus because his claim, if true, resulted in a sentence " 'in excess of the time allowed by law.' " (*In re Huffman* (1986) 42 Cal.3d 552, 555 [229 Cal.Rptr. 789, 724 P.2d 475].)

We again invoked this rule in a case in which a habeas corpus petitioner claimed two enhancement provisions were improperly applied to lengthen his overall sentence. (*In re Harris* (1989) 49 Cal.3d 131 [260 Cal.Rptr. 288, 775 P.2d 1057].) Although the petitioner in *Harris* had raised the issue unsuccessfully on direct appeal, we ruled he was entitled to renew the claim on habeas corpus because a misinterpretation of the penal statute would result in a longer sentence than was permitted by law, and imposition of the sentence was therefore in excess of the trial court's jurisdiction. (*Id.* at p. 134, fn. 2.)

term, "excess of jurisdiction," to describe those errors affecting a court's power or authority to act that nevertheless do not rise to the level of a loss of fundamental jurisdiction.

■ Thus, where a habeas corpus petitioner raises a legitimate claim that the trial court acted in excess of its jurisdiction, the *Waltreus* rule will not operate as a bar to a full airing of the grievance in a collateral proceeding. (*In re Harris, supra*, 49 Cal.3d at p. 134, fn. 2; *In re Huffman, supra*, 42 Cal.3d at p. 555.) "Fundamental jurisdictional defects [i.e., acts in excess of jurisdiction], like constitutional defects, do not become irremediable when a judgment of conviction becomes final, *even after affirmance on appeal.*" (*In re Winchester, supra*, 53 Cal.2d at p. 531, italics added.)[13]

■ Petitioner has not expressly contended that his case falls within the "excess of jurisdiction" exception to the *Waltreus* rule. Nevertheless, as explained above, because the superior court that tried and sentenced him may have acted in excess of its jurisdiction in doing so, we conclude he may raise the issue in a postappeal petition for a writ of habeas corpus.

In this case, petitioner contends he was only 15 years old at the time of his crimes. If so, he could not be sentenced to serve a term in state prison for his misdeeds, and was instead subject to only the various dispositional options available to the juvenile court, such as placement in the California Youth Authority. The state took the position that petitioner turned 16 years old on the day of the homicide-related crimes. This argument, accepted by the juvenile court, the sentencing court, and the Court of Appeal, resulted in a lengthy state prison term for petitioner. If he is correct that he was only 15 years old on the day of the crimes, it is manifest that the trial court exceeded its jurisdiction by sentencing petitioner to prison, for that dispositional choice was not available under any circumstances for those offenders less than 16 years old.

Although we thus conclude that petitioner's claim falls within the "excess of jurisdiction" exception to the *Waltreus* rule, we emphasize the narrowness of this exception. In entertaining such claims in collateral challenges to final judgments, past cases have suggested it was significant that "there [was] no material dispute as to the facts" (*In re Zerbe, supra*, 60 Cal.2d at p. 668), or that the judgment may be corrected "without the redetermination of any facts." (*Neal* v. *State of California, supra*, 55 Cal.2d at p. 17.)

Viewed in the light of the state's strong interest in finality, this consideration makes sense. A rule providing for the postappeal review of legal issues that requires an appellate court to reopen factual issues already sifted,

---

[13]Recognizing, however, that the availability of relief on collateral attack must be confined within reasonable bounds if we are to give content to the state's interest in the finality of judgments, we have noted that "despite the expanded scope of the great writ in California, the principle endures that habeas corpus will not lie to correct procedural error which is not of *fundamental* jurisdictional character." (*In re Sands, supra*, 18 Cal.3d at p. 857, italics added.)

evaluated, and decided at trial both poses a significant threat to the legal repose of such judgments, and threatens to consume scarce judicial resources needlessly. In such cases, the state's interest in the finality of its judgments is strong. By contrast, where such review does not require a redetermination of the facts, and thus poses a strictly legal issue, the state's interest is reduced. In such circumstances, an individual's interest in obtaining judicial review of an allegedly illegal sentence cannot be ignored.

In sum, we reiterate that a claim a court acted in excess of its jurisdiction, where such issue was raised and rejected on direct appeal (or could have been raised on appeal), may be entertained despite the *Waltreus* rule, provided a redetermination of the facts underlying the claim is unnecessary.

In this case, there is no dispute over the facts. The People do not question the accuracy of the evidence showing petitioner was born on October 21, 1968. Likewise, petitioner does not dispute that he committed the crimes in question on the day before his 16th birthday, October 20, 1984. Presented with a pure question of law which may demonstrate the trial court acted in excess of its jurisdiction, we conclude petitioner is not barred by the *Waltreus* rule from presenting the claim on his postappeal petition for a writ of habeas corpus.

### d. *Change in the Law*

A fourth exception to the *Waltreus* rule, established by case law, has permitted a petitioner to raise in a petition for writ of habeas corpus an issue previously rejected on direct appeal when there has been a change in the law affecting the petitioner. (See *In re Terry, supra,* 4 Cal.3d at p. 916 [new United States Supreme Court decision justifies postappeal habeas corpus petition]; *In re King* (1970) 3 Cal.3d 226, 229, fn. 2 [90 Cal.Rptr. 15, 474 P.2d 983] [new United States Supreme Court cases justify raising issue on habeas corpus even though petitioner failed to appeal]; *In re Jackson, supra,* 61 Cal.2d 500 [new California Supreme Court decision justified postappeal habeas corpus petition].) Petitioner claims *Johnson* v. *Superior Court* (1989) 208 Cal.App.3d 1093 [256 Cal.Rptr. 651] (hereafter *Johnson*), a Court of Appeal decision filed after his appeal was final, effected a change in the law thereby justifying his postappeal habeas corpus petition.

We reject the argument at the threshold because, as we explain, *post,* at page 843 et seq., the question regarding the proper method of age calculation was unsettled in prior cases, and no uniform rule had emerged. Because *Johnson, supra,* 208 Cal.App.3d 1093, simply added to the division in authority on this issue, it did not create a new rule of law. This "new-rule-of-law" exception to the *Waltreus* rule is, therefore, inapplicable on these facts.

## B. *Other Procedural Issues*

### 1. *Delay*

■ Respondent argues relief in this case is procedurally barred because petitioner has not explained the delay in raising the issue of his age in this collateral attack. The rule requiring a habeas corpus petitioner to justify any substantial delay in raising a claim, however, is inapplicable to a claim, as here, of sentencing error amounting to an excess of jurisdiction. An appellate court may "correct a sentence that is not authorized by law whenever the error comes to the attention of the court." (*In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13].) We thus reject respondent's argument.

### 2. *Waiver*

■ Respondent next contends petitioner's failure to seek pretrial writ relief following the fitness hearing certifying him to adult court requires that we find he waived the issue. In support, respondent relies on *People v. Chi Ko Wong* (1976) 18 Cal.3d 698 [135 Cal.Rptr. 392, 557 P.2d 976] (hereafter *Chi Ko Wong*). As we explain, although that case set forth the general rule, it does not control this case.

On the question of the proper challenge to a juvenile certification order, *Chi Ko Wong, supra*, 18 Cal.3d 698, sets forth the general rule that a minor must challenge a fitness determination by pretrial writ or "be deemed to have waived any challenge to the propriety of the certification." (*Id.* at p. 714.) By establishing this general rule, however, we did not create an inevitable obstacle to judicial review. Instead, we merely announced that "a certification order may *normally* be challenged only by extraordinary writ." (*Id.* at p. 714, italics added.)

Thus, for example, we went on to explain that in creating the rule that a minor must challenge a fitness determination by way of pretrial writ on pain of waiver, we did not "purport to foreclose the right of an accused . . . to assert in a proper case by petition for the writ of habeas corpus a challenge to his detention on the ground of a fundamental jurisdictional defect [citation] or, as here, a challenge to a defect which may have been waived but which, unlike the present case, the accused nevertheless preserved by timely if unsuccessful action." (*Chi Ko Wong, supra*, 18 Cal.3d at p. 716.)

A comparison between the present case and *Chi Ko Wong* compels the conclusion that petitioner did not waive the issue. The juvenile there did not

raise an age-based challenge to his certification order. Instead, he claimed (1) inflammatory hearsay information was introduced against him at the fitness hearing, and (2) the referee failed to state his reasons for finding him unfit. (*Chi Ko Wong, supra,* 18 Cal.3d at p. 716.) These are ordinary challenges to the certification order; the first is a garden-variety evidentiary complaint, the second a familiar procedural lament. Neither challenge rises to the fundamental level of the age-based claim asserted by petitioner Harris. In short, the petitioner in *Chi Ko Wong* challenged the *correctness* of the fitness determination, but did not dispute his *eligibility* to be tried as an adult. Petitioner Harris, by contrast, challenges his eligibility for the entire fitness determination process.

For the aforementioned reasons, we find *Chi Ko Wong, supra,* 18 Cal.3d 698, is not controlling on the facts presented in this case. Accordingly, on the particular facts of this case, we reject respondent's contention that petitioner waived the issue of his age by failing to seek a pretrial writ.

### 3. *Law of the Case*

Respondent further argues that petitioner is procedurally barred from raising the issue of his age because the previous Court of Appeal decision rejecting his lack of jurisdiction claim is law of the case. (See generally, *People* v. *Shuey* (1975) 13 Cal.3d 835 [120 Cal.Rptr. 83, 533 P.2d 211].) The rule discussed above that one may renew on habeas corpus certain challenges to a final judgment even after unsuccessfully raising the issue on direct appeal, however, presupposes that no law of the case barrier exists. (See *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2 [191 Cal.Rptr. 658, 663 P.2d 216].) None of the cases respondent cites contradicts this basic proposition nor applies the law of the case doctrine to prohibit an excess of jurisdiction challenge on habeas corpus. Accordingly, we reject the argument.

There being no procedural bar to considering the merits of the petition, we next turn to whether petitioner was 16 years old at the time of the homicide-related offenses and thus properly subject to a finding of unfitness and trial as an adult.

### C. *Computation of Petitioner's Age*

It is undisputed that petitioner committed the charged offenses on October 20, 1984, the day before his 16th birthday. Because the juvenile court retains exclusive jurisdiction over minors less than 16 years old (*In re Gladys R., supra,* 1 Cal.3d at p. 862), we thus must determine whether petitioner turned 16 years old on the day *preceding* his 16th birthday.

Were this not a legal question, it would be easily answered, for the common, everyday method of age calculation holds that a person attains a certain age on his or her corresponding birthday. Nevertheless, the common law rule for calculating a person's age has always been that one reaches a given age at the earliest moment of the day *before* their anniversary of birth. (32 Cal.Jur.3d, Family Law, § 6, pp. 36-37; 42 Am.Jur.2d, Infants, § 6, pp. 13-14; Annot. (1949) 5 A.L.R.2d 1142; 1 Blackstone's Commentaries 463.) The rationale is that " '[a] person is in existence on the day of his birth. On the first anniversary he or she has lived one year and one day.' " (*State* v. *Alley* (Tenn. 1980) 594 S.W.2d 381, 382, quoted in *Johnson, supra,* 208 Cal.App.3d at p. 1095.)

The subject is controlled in California by Civil Code section 26, enacted in 1872, which states: "The periods specified in the preceding section must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority." ▮▮▮ Our primary duty, of course, is to construe the statute to effectuate the Legislature's intent. " 'In construing . . . statutory provisions, . . . the intent of the enacting body is the paramount consideration. [Citations.] "We are mindful that the goal of statutory construction is ascertainment of legislative intent so that the purpose of the law may be effectuated." ' (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 194 P.2d 744].)" (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989 [9 Cal.Rptr.2d 102, 831 P.2d 327]; *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764 [274 Cal Rptr. 787, 799 P.2d 1220].) The failure of Civil Code section 26 to clearly and expressly embrace or reject the common law rule prompts the present dispute.

▮▮▮ The statutory language of Civil Code section 26, though far from lucid, indicates the Legislature intended to adopt the "birthday rule." It states the appropriate period "must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority." (*Ibid.*) Because the common law rule regarding time in general held a day has no fractions (see Annot., *supra,* 5 A.L.R.2d at p. 1145), the common law deemed a person born at any time on a particular day to have been born on the first minute of that day. This suggests the first clause of Civil Code section 26 was not constructed to adopt the common law rule.

In reality, 18 years from the first minute of life would expire—that is, the 19th year would begin—at that same minute on a person's 18th birthday, i.e., the day "corresponding" to the day of birth. Because a person is deemed

to have been born on the first minute of the day, the period of minority ends on that "same minute" 18 years later. In other words, the period of minority terminates on the first minute of one's 18th birthday. Because the plain meaning of Civil Code section 26 indicates the Legislature intended to adopt the "birthday rule," we conclude section 26 abrogates the common law rule regarding age calculation.

This interpretation is bolstered by the notation following Civil Code section 26 in the original 1872 annotated code. Apparently written by the code's drafters, the note states: "NOTE.—The first second of the *preceding* day is the common law rule.—Shars. Bl. Comm., I., p. 463, and note 11." (See Code Commrs. note foll. 1 Ann. Civ. Code, § 26 (1st ed. 1872, Haymond & Burch, commrs.-annotators p. 3, italics in original.)[14] This provides persuasive evidence that the drafters of Civil Code section 26 were aware of the common law rule. Moreover, by emphasizing the word "preceding" in their note, but not using that term in the code section itself, it is reasonable to infer that the drafters of Civil Code section 26 meant to alter the common law rule.

Further evidence is provided by the Legislature's short-lived amendment to the code 29 years later. Around the turn of the century, Civil Code section 26 was amended to clarify the code commissioners' intent. (Stats. 1901, ch. 157, § 7, p. 333.) That amendment read: "Thus, if a male is born at any time during the first day of January, nineteen hundred, he attains his majority at the first minute of the first day of January, nineteen hundred and twenty-one." According to the code commissioners, this sentence was added "to illustrate the meaning and make the section less obscure." (Rep. of Comm. for Revision and Reform of the Law, Civil Code (1900) p. 9, quoted in Note (1943) 17 So.Cal.L.Rev. 73 & fn. 8.) Although this amendment, along with several others, was declared unconstitutional because the revised law was not reenacted and published at length as revised (*Lewis* v. *Dunne* (1901) 134 Cal. 291 [66 P. 478]), it strongly suggests the code commissioners intended to abrogate, and not reenact, the common law rule.

Although the legislative history of Civil Code section 26 suggests the Legislature intended to abrogate the common law rule, judicial interpretation of Civil Code section 26 has been less than consistent. In *Ganahl* v. *Soher* (1884) 2 Cal.Unrep. 415 [5 P. 80], the question arose in this court whether

---

[14]The notation, "Shars, Bl. Comm., I., p. 463, and note 11," refers to the Commentaries on the Laws of England by William Blackstone, edited for this 1861 edition by George Sharswood. On the page indicated, it states: "So that full age in male or female is twenty-one years, which age is completed on the day preceding the anniversary of a person's birth . . . ." Note 11 of this antiquarian tome reiterates the common law rule.

the plaintiff had filed his action within the allowable five-year statute of limitations, which began running when he attained majority. The plaintiff's 21st birthday fell on April 11, 1876, and he did not file his suit until April 11, 1881. The court ruled that the filing period had elapsed by one day, reasoning that the plaintiff attained the age of majority on his birthday. "In computing the period of five years we must include the eleventh day of April, 1876, because, *as the plaintiff in question attained his majority the first minute of that day*, he had the whole of the day in which to sue; and computing that as the first day of the five years, the whole period of five years expired with the tenth day of April, 1881, and the action not having been commenced until the 11th of April, 1881, was barred by the provisions of the statute." (*Id.* at p. 416, italics added.) No mention was made of the common law rule.

The issue reappeared 23 years later in *Ex parte Wood* (1907) 5 Cal.App. 471 [90 P. 961]. In *Wood*, a complaint was filed in superior court on March 16, 1907, to confine applicant Julia Wood to a state reform school due to her alleged incorrigibility. The school in question was authorized to admit girls between the ages of eight and eighteen. Wood argued she was ineligible for commitment to the school because she had already turned 18, her 18th birthday being March 17, 1907, the day after the complaint was filed. The Court of Appeal agreed. Citing Civil Code section 26, the court explained that "It thus conclusively appears that . . . Wood completed the period of her minority at the commencement of the sixteenth day of March, 1907, and that at the time of said adjudication and commitment she was of full adult age." (*Ex parte Wood, supra,* 5 Cal.App. at pp. 472-473.)[15] The court thus held Wood turned 18 on the day *before* her 18th birthday. As with *Ganahl v. Soher, supra*, the *Wood* court did not compare the common law rule with the language of Civil Code section 26.

Additional light was shed on the matter in *People v. Dudley* (1942) 53 Cal.App.2d 181 [127 P.2d 569]. In that case, the defendant was charged with violating section 288, lewd and lascivious conduct with a minor under 14 years old. Because the sexual assault occurred on the day before the victim's 14th birthday, the issue was whether the defendant's alleged acts violated the specified statute. The Court of Appeal recognized the common law rule "prevails in many jurisdictions" (*People v. Dudley, supra,* 53 Cal.App.2d at p. 183), and that the issue was whether Civil Code section 26 reenacted or abrogated the common law rule.

---

[15]At this point, the *Wood* court cited *Ganahl v. Soher, supra,* 2 Cal.Unrep. 415. The citation is puzzling, inasmuch as *Ganahl* holds that—contrary to the common law rule—one attains a particular age *on* his or her birthday.

The *Dudley* court discussed *Ganahl v. Soher, supra,* 2 Cal.Unrep. 415,[16] as well as *Ex parte Wood, supra,* 5 Cal.App.471, and concluded: "We are of the opinion that section 26 of the Civil Code is merely a reenactment of the rule of the common law. The prosecutrix was born on November 4, 1927. The cycle of fourteen years was completed at the end of November 3, 1941. That day was, therefore, 'the corresponding *day completing* the period . . .' of fourteen years. . . . On November 4, 1941, she started her fifteenth year so her fourteenth year was completed on November 3, 1941, and under the provisions of the section she was fourteen years old on that day and defendant cannot be convicted under the clear provisions of section 288 of the Penal Code." (*People v. Dudley, supra,* 53 Cal.App.2d at p. 185, italics in original.)

More recently, the Court of Appeal confronted the question of age calculation on facts very similar to those in the present case. In *People v. Valladares* (1984) 162 Cal.App.3d 312 [208 Cal.Rptr. 604], the defendant contended on appeal that the superior court lacked jurisdiction to try him for the charged felony offenses because the crimes were allegedly committed the day before his 18th birthday, and thus when he was only 17. The appellate court rejected the claim, relying on *People v. Dudley, supra,* 53 Cal.App.2d 181, to hold that the common law rule prevailed. Although the defendant contended *Dudley* had been wrongly decided, the *Valladares* court rejected the claim.

The final decision to speak on the issue was in *Johnson, supra,* 208 Cal.App.3d 1093. In that case, the petitioner was charged with an offense allegedly committed on August 12, 1988. When it was discovered that the petitioner's 18th birthday was August 13, 1988, he was transferred to juvenile court but was ultimately transferred back to adult court on the ground that he was not a minor when the offense was committed. The petitioner then sought a writ from the Court of Appeal.

That court granted relief, holding that the petitioner did not attain majority until the day of his 18th birthday. In choosing to "follow the Supreme Court's interpretation of [Civil Code] section 26 in *Ganahl v. Soher, supra,* 2 Cal.Unrep. 415," the *Johnson* court acknowledged that the court in *People v. Dudley, supra,* 53 Cal.App.2d 181, believed *Ganahl's* reasoning was "dictum." (*Johnson, supra,* 208 Cal.App.3d at p. 1097.) The *Johnson* court, however, disagreed with that characterization. It reasoned that "If plaintiff [in *Ganahl*] had reached his majority on April 10th [the day before his

---

[16]The *Dudley* court characterized the critical language in *Ganahl v. Soher, supra,* as dictum. (*People v. Dudley, supra,* 53 Cal.App.2d at p. 185.) This characterization was subsequently disputed in *Johnson, supra,* 208 Cal.App.3d at page 1097. (See discussion, *post,* this page.)

birthday], there would not have been any issue to consider. The action would obviously have been barred on April 11, 1881. The statement that the 11th [the plaintiff's birthday] was the date on which plaintiff attained his majority is a statement of the law necessary to the decision, and therefore binding precedent." (*Ibid.*)

As the history of this issue in California courts makes clear, although there is strong support for the "birthday rule," there is also support for the common law rule of calculating age. A survey of our sister states finds a similar split, although a majority of states follow the common law rule. (For cases following the common law rule, see *Thomas* v. *Couch* (1930) 171 Ga. 602 [156 S.E. 206]; *Erwin* v. *Benton* (1905) 120 Ky. 536 [87 S.W. 291]; *Gouldsboro* v. *Sullivan* (1934) 132 Me. 342 [170 A. 900]; *Nelson* v. *Sandkamp* (1948) 227 Minn. 177 [34 N.W.2d 640, 5 A.L.R.2d 1136]; *Totton* v. *Murdock* (Mo. 1972) 482 S.W.2d 65; *In re Edward* (R.I. 1982) 441 A.2d 543; *Pate* v. *Thompson* (Tex.Civ.App. 1944) 179 S.W.2d 355; see generally, Annot., *supra*, 5 A.L.R.2d at p. 1147.)

The modern trend, however, is to reject the common law rule in favor of the more commonsense rule that the controlling day is one's birthday. (*Patterson* v. *Monmouth Regional High School Bd. of Education* (1987) 222 N.J. Super. 448 [537 A.2d 696]; *State* v. *Alley, supra*, 594 S.W.2d 381; *United States* v. *Tucker* (D.C.App. 1979) 407 A.2d 1067; *People* v. *Stevenson* (1966) 17 N.Y.2d 682 [269 N.Y.S.2d 458]; *Bynum* v. *Moore* (1923) 101 Okla. 128 [223 P. 687].) The Pennsylvania Supreme Court recently joined this group. (*Com.* v. *Iafrate* (Pa. 1991) 594 A.2d 293, overruling *Firing* v. *Kephart* (1976) 466 Pa. 560 [353 A.2d 833].)

In arguing for a contrary result, the Attorney General begins with his apparent concession of the issue in *Johnson, supra*, 208 Cal.App.3d 1093. In an informal opposition filed in that case (see Cal. Rules of Court, rule 60), he agreed that Civil Code section 26 meant that a person attains a certain age on his or her birthday. (*Johnson, supra*, at p. 1096.) He now argues that concession must be viewed in the context of that case. Thus, he claims *Johnson* concerned the attainment of majority only, and not the calculation of age in general. By contrast, the question here concerns when a minor turns 16 and is thus subject to a finding of unfitness under Welfare and Institutions Code section 707.

The Legislature, however, "is free to exercise its judgment in fixing the age limits of minority for particular purposes." (*In re Herrera* (1943) 23 Cal.2d 206, 213 [143 P.2d 345], disapproved on other grounds, *People* v.

*Olivas* (1976) 17 Cal.3d 236, 257 [131 Cal.Rptr. 55, 551 P.2d 375].)[17] Although the Attorney General thus argues his concession in *Johnson, supra,* concerned only attainment of the age of 18 because that is the only true age of "majority," his argument fails.

It is clear that calculation of age is a question that cuts across the laws of California, affecting myriad statutes and regulations. (See, e.g., Civ. Code, §§ 25.5 [consent to blood donation; 17 years], 25.9 [consent to furnishing of outpatient services; 12 years], 4101 [consent to marry; 18 years]; Ed. Code, § 48200 [subject to compulsory education; ages 6 to 16]; Elec. Code, § 17 ["elector" means a citizen 18 years or older]; §§ 266 [enticing female under 18 for purposes of prostitution], 271 [willful desertion of child under 14], 272 [contributing to delinquency of minor under 18], 273b [prohibiting confining child under 16 with adult prisoners], 288 [lewd conduct with child under 14], 288a, subds. (b), (c) [age-based sentence enhancements for oral copulation]; Veh. Code, § 12507 [licenses for those aged 16 to 18]; Welf. & Inst. Code, §§ 733 [no ward under 8 years old may be committed to the Youth Authority], 208.5 [minor detained in county institution prior to turning 18 may stay until age 19].)

It would seem absurd to calculate each of these ages in a different manner, resulting in a mosaic of various age calculation methods. The law demands more certainty. Accordingly, absent an expression of a contrary legislative intent, we hold Civil Code section 26 generally applies to all statutory calculations of age, including when a minor turns 16 under Welfare and Institutions Code section 707. We therefore reject the distinction urged by the People.

■■■ The Attorney General also relies on the reasoning of *People v. Valladares, supra,* 162 Cal.App.3d 312, that "right or wrong, the decision in [*Dudley, supra,* 53 Cal.App.2d 181] was binding on the trial court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)" (*Valladares, supra,* at p. 318.) This reasoning, however, fails to recognize that *Ganahl* was a California Supreme Court case.[18] Thus, the *Valladares* court's conclusion that *Dudley* was "binding" on the

---

[17]It is somewhat inconsistent for the Attorney General to proffer this argument since he clearly suggested otherwise in *Johnson,* noting that age calculation "is significant *in a number of criminal statutes,* including . . . sections 261.5 (unlawful sexual intercourse—under 18), 266j (procurement for lewd and lascivious acts—under 16), 286 (sodomy—punishment— related to age of victims and perpetrators)." (*Johnson, supra,* 208 Cal.App.3d at pp. 1096-1097, italics added.) He thus assumed that any decision in *Johnson* would affect situations other than those in which attainment of majority was significant.

[18]Nor does the fact that *Ganahl* v. *Soher, supra,* 2 Cal.Unrep. 415, is not an officially reported case detract from its status as precedent. (See *MacDonald* v. *MacDonald* (1909) 155

trial court is inaccurate. The existence of *Ganahl* also undermines the Attorney General's further argument that we may infer *Dudley* accurately interpreted legislative intent because the Legislature has not acted to amend Civil Code section 26.

 Accordingly, we conclude that the Legislature—by enacting Civil Code section 26—intended to abrogate the common law rule regarding age calculation, and to instead adopt the "birthday" rule.

### Conclusion

Because the claim raised by petitioner, if meritorious, would establish that the trial court had acted in excess of its jurisdiction, we find petitioner may raise the issue of his age in this collateral proceeding despite having unsuccessfully raised the issue on direct appeal. Moreover, the crimes for which petitioner was convicted occurred the day before his 16th birthday. Under Civil Code section 26, he was only 15 years and 364 days old. Accordingly, the superior court acted in excess of its jurisdiction in trying him and sentencing him under the general, adult law, because Welfare and Institutions Code section 707 limits a finding of unfitness to those between the ages of 16 and 18.

 The particular factual setting of this case justifies an unusual disposition. First, although the superior court acted in excess of its jurisdiction by trying petitioner under the general criminal law, petitioner makes no claim, and the record does not reveal, that his trial was unfair, or that the determination of the facts of the crime was inaccurate or unreliable. As we explained, *ante*, the superior court possessed subject matter jurisdiction over the case.

Second, petitioner's crimes occurred in 1984. Holding a new "trial," (i.e., a jurisdictional hearing in juvenile court), after so long would surely be a burden on the People and would serve no meaningful purpose inasmuch as we have no reason to doubt the accuracy of the superior court's adjudication of petitioner's criminal responsibility in this matter. Moreover, petitioner is no longer a juvenile; we note this court was informed at oral argument that petitioner is now 24½ years old.

Section 1484 states that after a party files his or her petition for habeas corpus, the respondent files the return, and the court hears appropriate evidence (if necessary), "[t]he court . . . must . . . dispose of such party *as the justice of the case may require.*" (Italics added.) Similarly, section 1489

Cal. 665, 672 [102 P. 927]; *Estate of Little* (1937) 23 Cal.App.2d 40, 43 [72 P.2d 213]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 765, pp. 733-734.)

states that "[i]f it appears to the court . . . that the party is guilty of a criminal offense, or ought not to be discharged," the court "may discharge such prisoner, let him to bail, if the offense be bailable, or recommit him to custody, as may be just and legal." (Italics added; see also *Carafas* v. *LaVallee* (1968) 391 U.S. 234, 239 [20 L.Ed.2d 554, 559, 88 S.Ct. 1556] [emphasizing the flexible nature of federal habeas corpus remedies under applicable statutes]; *Andrews* v. *United States* (1963) 373 U.S. 334, 339 [10 L.Ed.2d 383, 387, 83 S.Ct. 1236] [same]; 28 U.S.C. § 2243 ["The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."].)

The Penal Code thus contemplates that a court, faced with a meritorious petition for a writ of habeas corpus, should consider factors of justice and equity when crafting an appropriate remedy. It is clear that discharge of the prisoner is not required in a circumstance where, as here, he does not challenge the correctness of the factual determinations made by the court that tried him. Had the juvenile court calculated his age correctly, it would have retained jurisdiction over him and fashioned a disposition more appropriate to his status as a juvenile. Thus, had this case not gone awry in that early stage in the proceedings, the only difference now would be petitioner would be subject to a juvenile disposition rather than serving a lengthy a term in state prison.

Under the facts of this case, we conclude petitioner is not entitled to a new trial (or hearing) on the merits. Instead, the petition for a writ of habeas corpus is granted, petitioner's adult criminal convictions are deemed to be findings of jurisdiction under Welfare and Institutions Code section 602, and the case is remanded to the Superior Court of Los Angeles County for a determination of a new *disposition* by the juvenile court of that county. Upon finality, the clerk shall remit a certified copy of this opinion and order to the superior court for filing, and respondent shall serve another copy thereof on the prosecuting attorney in conformity with section 1382, subdivision (b). (See *In re Sixto, supra,* 48 Cal.3d at p. 1265; *In re Hall* (1981) 30 Cal.3d 408, 435, fn. 9 [179 Cal.Rptr. 223, 637 P.2d 690].)

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—I concur in the result.

I agree with the majority that petitioner is entitled to relief on habeas corpus. He collaterally attacks a judgment of conviction and sentence entered by the superior court on a jury's verdict. He claims that the superior court was without jurisdiction. Persuasively so. "[T]he juvenile courts exercise exclusive jurisdiction over all minors under the age of 16; these children

cannot otherwise be tried as criminal offenders." (*In re Gladys R.* (1970) 1 Cal.3d 855, 862 [83 Cal.Rptr. 671, 464 P.2d 127]; accord, e.g., *T.N.G.* v. *Superior Court* (1971) 4 Cal.3d 767, 784 [94 Cal.Rptr. 813, 484 P.2d 981].) Petitioner committed the offenses in question when he was 15 years of age. As a result, the superior court lacked jurisdiction. The defect "render[s] the judgment void . . . ." (4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Jurisdiction and Venue, § 1822, p. 2159.) It "cannot be waived . . . ." (6 Witkin & Epstein, Cal. Criminal Law, *supra,* Extraordinary Writs, § 3349, p. 4153.)[1] It "can always be attacked by habeas corpus . . . ." (6 Witkin & Epstein, *op. cit. supra,* at p. 4153.) Put differently, it can never be "procedurally barred."

In other respects, however, I dissent.

First, I disagree with the majority's analysis. The "substantive" discussion is flawed. As stated, the superior court was *without* jurisdiction.[2] It did not merely act in *excess* of jurisdiction. The "procedural" discussion is also open to question. On its very face, it is obiter dictum, seeing that petitioner's lack-of-jurisdiction claim is not subject to any "procedural bar." Worse still, it is mischievous, since it may be read to elevate the legitimate interest of the state in the finality of a criminal judgment over the altogether compelling interest of both the state and the individual in the legality of the underlying adjudication.

Second, I disagree with the majority's disposition. The superior court was without jurisdiction. Hence, it could not have "tried [petitioner] as [a] criminal offender[]." (*In re Gladys R., supra,* 1 Cal.3d at p. 862.) Therefore, the trial that it actually conducted was a nullity. So too was the jury's verdict returned in its course. It is neither "just" nor "equitable" to attempt to salvage a determination of guilt that is devoid of legal significance. True, the superior court would have had jurisdiction if it had been sitting as the juvenile court. But it was not. The state must shoulder all the consequences of the superior court's lack of jurisdiction. Certainly, petitioner should bear

---

[1] *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698 [135 Cal.Rptr. 392, 557 P.2d 976] is not to the contrary. There, we did not state or even imply that a minor can waive lack of jurisdiction on the part of the superior court. The reason is plain. In that case, the superior court did in fact have jurisdiction. The minor had committed the offenses in question when he was 16 years of age or older. As a result, the superior court and the juvenile court had concurrent jurisdiction.

[2] In arriving at the opposite conclusion, the majority rely on certain broad language in *People* v. *Nguyen* (1990) 222 Cal.App.3d 1612, 1619 [272 Cal.Rptr. 523]. They err. The Court of Appeal's opinion overlooks the holding of our decisions, quoted above, that the "juvenile courts exercise *exclusive* jurisdiction over all minors under the age of 16 . . . ." (*In re Gladys R., supra,* 1 Cal.3d at p. 862, italics added; accord, e.g., *T.N.G.* v. *Superior Court, supra,* 4 Cal.3d at p. 784.) More important, it conflicts with our holding and, as a consequence, falls under its authority.

none. On more than one occasion, he timely claimed that the juvenile court had exclusive jurisdiction. Each time, he was rebuffed.

For the reasons stated above, I would grant the petition for writ of habeas corpus and vacate the judgment of the superior court.

Petitioner's application for a rehearing was denied September 30, 1993, and the opinion was modified to read as printed above. Mosk, J., was of the opinion that the application should be granted.