Filed 8/25/20  P. v. Marcus CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ZECOREY LAMONT MARCUS,<br><br>Defendant and Appellant. | B300883<br><br>(Los Angeles County<br>Super. Ct. No. YA071844) |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Zecorey Lamont Marcus challenges the trial court's denial of his petition under Penal Code section 1170.95[1] for resentencing on his murder conviction. In 2011, a jury convicted Marcus of murder on the basis of his participation in a robbery in which a cohort shot and killed a victim.  The jury also found true a felony-murder special circumstance (§ 190.2, subd. (a)(17)), concluding beyond a reasonable doubt that Marcus was a major participant in the burglary who acted with reckless indifference to human life. The trial court denied the petition because on the basis of this finding, Marcus could still be convicted of murder and would be ineligible for resentencing under section 1170.95.

Marcus contends that the special circumstance allegation is no longer valid in light of our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the meaning of "major participant" and "reckless indifference to human life." (*Ibid*.)  We affirm the trial court's order on the ground that the proper procedure for challenging a special circumstance finding is a petition for habeas corpus, not a petition under section 1170.95. (See *People v. Galvan* (Aug. 4, 2020, B300323) __ Cal.App.5th ___ [2020 WL 4462175] (*Galvan*).)

---

[1] Subsequent statutory references are to the Penal Code.

# FACTS AND PROCEEDINGS BELOW

The facts of the case are discussed below as described in our opinion in Marcus's direct appeal (*People v. Galloway* (June 8, 2012, B232165) [nonpub. opn.] (*Galloway*)).

## A. *The Robbery of Pedro Guerrero in May 2008*

"Anna Sanchez, a friend of defendants Galloway and Marcus, testified that she drove defendants to a convenience store in Gardena and waited for them in her car while they went into the store to buy rolling papers for marijuana and orange juice. After a short time, Galloway came out of the store and told Sanchez to park her car across the street because he was going to rob a man he had seen in the store cashing a check. Moments after Sanchez moved her car, defendants came running toward her. Galloway was holding a black revolver. Defendants jumped into Sanchez's car and Galloway told Sanchez: 'Go, go, go.' Sanchez drove away as Galloway handed the gun to Marcus in the backseat. She asked them what happened 'and they said they robbed the man that was in the store cashing his check.' Sanchez identified defendants from a surveillance video shot from within the store.

"Pedro Guerrero testified that he went to a store in Gardena to cash a check for $450.00. As he sat in his car, putting away his money, two men walked up. One man pointed a black gun at Guerrero's head. 'They told me to give them the money or that they would kill me,' Guerrero testified. Guerrero gave the money to the man with the handgun. He did not report the robbery to police because he was afraid but he told the storekeeper about it. A week later the police located Guerrero and showed him photographic lineups and he identified a

3

photograph of Galloway as the man who robbed him with a handgun." (*Galloway*, *supra*, B232165, at p. 2.)

### B.     *The Murder of Hae Sook Roh in May 2008*

"Five days after the Guerrero robbery, at approximately 6:45 p.m., Arthenia Thomas heard gunfire coming from the direction of a T-shirt shop in Gardena and saw two men running from the shop and down the street toward a restaurant where she lost sight of them. Her only description of the two men was that they were wearing black 'hoodies' and had bandanas over their faces. A few minutes later a silver four-door car drove 'really fast' out of the restaurant parking lot. Because the windows were tinted, Thomas could not tell how many people were in the car. Thomas testified that the car depicted in People's exhibit 4 looked like the car she saw leaving the parking lot.

"When the police responded to the shooting, they found the body of Hae Sook Roh, who had worked at the T-shirt shop, lying dead behind the counter near the cash register.

"The prosecution showed the jury an audio and video recording from a surveillance camera in the T-shirt shop. The video showed a black male with a gun in his left hand entering the area in front of the cash register. The man wore white pants, a long white T-shirt and an open waist-length jacket. He had a white cloth tied across his face below his eyes. The bottom left hand portion of the video showed the pant leg and shoe of a second person. The audio portion of the tape contained the voice of the man with the gun saying: 'Give it up. Give it up. Give me the money.' A second voice said[,] 'Give him the money' and then the gunman fired at Roh saying, 'Bitch. Give it up.' He repeated[,] 'Give it up' and then shot Roh two more times, grabbed the money from the register and ran. The gun was not

4

recovered.  The take from the robbery-murder was approximately $35.

"Sanchez testified that she was at Galloway's house on the day of the murder.  When it started to get dark, Galloway went to the trunk of his mother's car and changed into basketball shorts, a white T-shirt and waist-length jacket.  He then began waiting in front of the house.  A gray Chevrolet Impala with tinted windows pulled up in front of the house.  Someone inside the car opened the back door, and as Galloway got in, Sanchez saw Marcus lean over.  Sanchez identified the car shown in the People's exhibit 4 as the car she saw that evening.  The same car returned to Galloway's house 20 to 30 minutes later and Galloway got out.  Sanchez observed that Galloway was breathing heavily, his palms were sweating and he was acting 'like he was nervous and scared.'  Galloway told her that 'he shot a lady at the T-shirt place.'  He 'started laughing like it was funny' and said 'the bitch wouldn't die.  So he just had to keep shooting her.'  Sanchez asked Galloway why he shot the lady and Galloway replied that he was mad because he wanted to rob the store but 'right before he walked in, she dropped the money [in the floor safe] [a]nd so he shot her.'

"A few days later Galloway showed Sanchez a YouTube video of the murder and robbery at the T-shirt shop.  He laughed again while he watched it.  Sanchez recognized Galloway on the video because he was wearing the same clothes he wore when he left his mother's house the evening of the murder.  She also recognized the gun in the video as the gun Galloway had used in the robbery of Pedro Guerrero." (*Galloway*, *supra*, B232165, at pp. 3–4.)

### C.    *The Defendants' Custodial Statements*

"After defendants were arrested, they were seated next to each other on a bench in a hall of the jail.  The bench had a hidden recording device.  The prosecution played the recording of the defendants' conversation to the jury.  In that conversation Galloway told Marcus that the police showed him a picture of Marcus inside the store just before the Guerrero robbery.  Marcus acknowledge[d] he [would] have to serve 15 years for the robbery but told Galloway that if he got bailed out 'I'm gone.'  Galloway told Marcus not to worry because he admitted the robbery and told the police Marcus had nothing to do with it and that he didn't even know Marcus.  Later in the conversation, Galloway admitted his involvement in the murder.  Marcus also admitted being at the scene of the murder, noting that the video showed him wearing the same shoes that he was wearing when he was arrested."  (*Galloway*, *supra*, B232165, at p. 4.)

### D.    *The Credibility of Sanchez*

"Sanchez admitted she played a role in the robbery of Guerrero, that she pleaded guilty to that crime, that she was in custody at the time of her trial testimony and that she was receiving lenient treatment in her sentencing in exchange for her testimony against defendants.  She also admitted that she had previously been convicted of forgery and the unlawful taking of a motor vehicle.

"Sanchez further admitted that she had been a regular user of marijuana for six to nine months prior to the murder of Roh; that she 'smoke[d it] every day;' and that she had smoked marijuana just before the Guerrero robbery and was feeling 'mellow' at the time.  Sanchez testified that she smoked a type of marijuana known as 'Chronic' which, she agreed, is a

'particularly potent' and 'intense' form of the drug.  In addition to smoking marijuana, Sanchez stated that on weekends she used Ecstasy.  ([This court took] judicial notice that the T-shirt robbery and murder were not committed on a weekend.)  She testified that she stopped using any drugs after May 12, 2008, the date of the robbery-murder.

"The defense called a forensic toxicologist who testified that in his opinion someone who smoked Chronic every day over a six- to nine-month period would suffer from confusion, delusion and 'disoriented perception.' " (*Galloway*, *supra*, B232165, at p. 5.)

A jury convicted Marcus of one count of first degree murder (§ 187, subd. (a)), and found true a felony-murder special circumstance allegation (§ 190.2, subd. (a)(17).  The jury also convicted him of two counts of robbery (§ 211), and found true allegations of gang and firearm enhancements on all three counts.  The court imposed a sentence of life without the possibility of parole for murder, plus an additional 25 years to life for the firearm enhancement.  On appeal, we struck the gang enhancements for lack of substantial evidence, as well as the firearm enhancements, which were invalid without a gang enhancement (see § 12022.53, subd. (e)(1)(A)), but we otherwise affirmed the judgment.  (See *Galloway*, *supra*, B232165, at p. 11.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine.  Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill;

or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder because of the new law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Marcus filed a petition for resentencing on February 26, 2019. The trial court appointed counsel to represent Marcus and forwarded the petition to the district attorney. The district attorney moved to deny the petition on the grounds that Senate Bill No. 1437 is unconstitutional, and that, in any case, the jury's special circumstance finding precluded Marcus from making a prima facie case that he was entitled to resentencing. Marcus's counsel filed reply briefs contesting both of the district attorney's arguments. The trial court denied the petition on the ground that the record in the case showed as a matter of law that Marcus was not entitled to relief. The court found that the facts of the case, as described in our prior opinion, "establish[ ] that [Marcus] was, at a minimum, a major participant in the murder and acted with reckless indifference to human life during the course of the murder."[2]

---

[2] The trial court made no finding as to the constitutionality of Senate Bill No. 1437. Because the Attorney General does not argue that the law is unconstitutional, we do not address the issue here.

# DISCUSSION

## A.  *Background on Section 1170.95*

Section 1170.95 allows a defendant serving a sentence for felony murder who would not be guilty of murder because of the new law to petition for resentencing.  The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility:  (1) He was charged with murder in a manner "that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine" (§ 1170.95, subd. (a)(1)); (2) He "was convicted of" or pleaded guilty to "first degree or second degree murder" (§ 1170.95, subd. (a)(2)); and (3) He "could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective" as a part of Senate Bill No. 1437 (§ 1170.95, subd. (a)(3)).  As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life.

Upon receipt of a petition, the trial court reviews it to determine whether the petitioner has made a prima facie case for relief.  (§ 1170.95, subd. (c).)  If the petitioner meets this requirement, the court issues an order to show cause and holds a hearing to determine whether to vacate the murder conviction.  (§ 1170.95, subd. (d)(1).)  At this final stage of the proceeding, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)  In this case, the trial court appointed counsel and received briefing, but denied Marcus's petition on the ground that

9

he had failed to make a prima facie case that he was entitled to relief.  (See § 1170.95, subd. (c).)

**B.** ***The Proper Procedure for Challenging a Felony-murder Special Circumstance Is a Habeas Corpus Petition***

The primary obstacle preventing Marcus from establishing his eligibility for resentencing is the jury's finding of a felony-murder special circumstance.  To be eligible for resentencing under section 1170.95, Marcus must show that he "could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective" as a part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)  Under the newly amended version of section 189, a defendant can be convicted of felony murder only if he was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e)(3).)  These are identical to the circumstances in which a felony-murder special circumstance applies.  (See § 190.2, subds. (b)–(d).)  Thus, the jury's special circumstance finding shows as a matter of law that Marcus could still be convicted of felony murder under the new definition, and prevents Marcus from making a prima facie case that he is eligible for resentencing.

Marcus attempts to avoid this conclusion by attacking the felony-murder special circumstance finding.  He notes that after his conviction of felony murder, the Supreme Court decided *Banks* and *Clark*, which decisions represent a significant shift in the interpretation of the concepts of major participation and

10

reckless indifference to human life. In *Banks*, the Court evaluated existing United States Supreme Court jurisprudence on the issue and set out a series of considerations relevant to determining whether a particular defendant was a major participant in the underlying felony. (See *Banks*, *supra*, 61 Cal.4th at p. 803.) The Court did the same in *Clark* with respect to whether the defendant acted with reckless indifference to human life. (See *Clark*, *supra*, 63 Cal.4th at pp. 618–622.) These new considerations clarified the requirements for the felony murder special circumstance so significantly that courts have allowed defendants to challenge the validity of pre-*Banks* and *Clark* special circumstance findings via habeas corpus, making an exception to the rule that ordinarily bars a defendant from challenging the sufficiency of the evidence in a habeas corpus petition. (See, e.g., *In re Scoggins* (2020) 9 Cal.5th 667, 673–674; *In re Miller* (2017) 14 Cal.App.5th 960, 979.)

Because no court has examined whether Marcus was a major participant who acted with reckless indifference to human life according to the standards enunciated in *Banks* and *Clark*, Marcus argues that the prior special circumstance finding does not show as a matter of law that he is ineligible for resentencing under section 1170.95.

The Attorney General argues, however, that in order to challenge the validity of a felony-murder special circumstance, a defendant must file a petition for a writ of habeas corpus. He may not seek relief via section 1170.95. We agreed with this position in our recent opinion in *Galvan*, *supra*, __ Cal.App.5th __ [2020 WL 4462175], and we do so again here.

As we explained in *Galvan*, a defendant subject to a pre-*Banks* and *Clark* special circumstance is ineligible for

11

resentencing under section 1170.95 because of the basis of his claim. Although Marcus asserts that he could not now be convicted of murder, "the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life. If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Galvan*, *supra*, ___ Cal.App.5th ___ [2020 WL 4462175 at p. *4].)

By requiring a defendant to seek relief via habeas corpus, we avoid creating a disparity in which similarly situated defendants' cases are evaluated under different standards based solely on the date of their convictions. Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding. If the judgment is affirmed, it would be the law of the case in any proceedings thereafter as to those findings. (*In re Saldana* (1997) 57 Cal.App.4th 620, 625; see also *In re Harris* (1993) 5 Cal.4th 813, 829 ["in the absence of strong justification, any issue that was *actually* raised and rejected on appeal cannot be renewed in a petition for a writ of habeas corpus"].) "But where, as here, a defendant was convicted

before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt.  (See [*People v.*] *Gomez* [(2020)] 52 Cal.App.5th 1[, 16].)  Yet nothing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants." (*Galvan*, *supra*, ___ Cal.App.5th ___ [2020 WL 4462175 at p. *5].)

## DISPOSITION

The trial court's order is affirmed.
NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


SINANIAN, J.*

---

&ast; Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13