Filed 9/1/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE MURILLO,<br><br>    Defendant and Appellant. | B297546<br><br>(Los Angeles County<br>Super. Ct. No. LA010613) |

APPEAL from an order of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge. Affirmed.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

Mark Zahner (California District Attorneys Association); Michael A. Hestrin, District Attorney (County of Riverside), Alan D. Tate, Managing Deputy District Attorney, Jesse Male, Deputy District Attorney; Jason Anderson, District Attorney (County of San Bernardino), and James R. Secord, Deputy District Attorney, for California District Attorneys Association as Amicus Curiae on behalf of the Plaintiff and Respondent.

———————————————

Defendant and appellant Jose Murillo challenges the trial court's denial of his petition under Penal Code section 1170.95[1] for resentencing on his murder conviction. A jury convicted Murillo in 1993 of murder on the basis of his participation in a burglary in which a cohort shot and killed a victim. The jury also found true a felony-murder special circumstance (§ 190.2, subd. (a)(17)), concluding beyond a reasonable doubt either that Murillo urged his cohort to kill the victim, or that he was a major participant in the burglary who acted with reckless indifference to human life. The trial court denied the petition because, on the basis of this finding, Murillo could still be convicted of murder and would be ineligible for resentencing under section 1170.95.[2]

_____

[1] Subsequent statutory references are to the Penal Code.

[2] On February 3, 2020, Murillo filed a petition for a writ of habeas corpus. On February 11, 2020, we ordered the petition be considered concurrently with this appeal and invited the parties to file informal briefs. The People filed an informal response on May 5, 2020 and Murillo filed a reply brief on May 11, 2020. (*In re Jose Murillo*, case No. B303960.) Murillo's petition for writ of habeas corpus is denied by separate order filed concurrently herewith.

Murillo contends that the special circumstance finding is no longer valid in light of our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the meaning of "major participant" and "reckless indifference to human life." We affirm the trial court's order on two grounds: First, the proper procedure for collaterally challenging a special circumstance finding is a petition for habeas corpus, not a petition under section 1170.95. (See *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*).) Second, the record of conviction shows as a matter of law that the special circumstance finding is valid even under *Banks* and *Clark*.

## FACTS AND PROCEEDINGS BELOW

In a prior opinion in Murillo's direct appeal (*People v. Murillo* (July 28, 1994, B078813) [nonpub. opn.] (*Murillo*)), this court described the facts of this case, beginning with the prosecution's case:

"During the evening of April 12, 1992, 15-year-old Mirna G., 14-year-old Gabriel N. and defendant gathered at a park with a number of others. At some point, it was decided that a group of these individuals would do a 'beer run,' meaning to take beer from a store without paying for it. Mirna, Gabriel, defendant and someone named Peeker made the run. As they drove, they decided Gabriel and defendant would enter the store and get the beer; Mirna would hold the door for them and Peeker would remain in the automobile, ready to drive. Defendant showed the others a handgun.

"After trying several stores, the group settled on one at approximately 11:00 p.m. After the group parked in the Mobil gasoline station, defendant, Gabriel and Mirna walked to the

3

store.  As previously arranged, Mirna stayed at the door, while defendant and Gabriel entered the store.  Gabriel then walked back and told Mirna to get the beer while he held the door. Defendant and Mirna took several cases of beer and walked out of the store with it; Gabriel followed.  As they left the store, they noticed Peeker was putting gasoline into the automobile; they began to run.

"Rocco Pugliese (Pugliese), Eric Hice (Hice) and Chris Brown (Brown), who were standing in the store's parking lot, saw defendant and Mirna running away with something in bags, followed by Gabriel, then saw the store clerk make a gesture that led them to believe there had been a crime.  Believing the store had been robbed, Pugliese and Brown pursued the trio who had emerged from the store.

"Defendant, Gabriel and Mirna ran across the street; as they ran, defendant and Mirna dropped the beer.  Brown caught up with Mirna and pulled her hair, causing her to fall.  She got up and ran in a direction different from that taken by defendant and Gabriel.  Pugliese pursued her, while Brown pursued Gabriel and defendant, going over a wall after them.  As Mirna neared a yard down the street, she heard defendant tell Gabriel, 'Shoot him.'  This was followed by a gunshot.  Pugliese found Brown lying on the grass in a yard beyond the brick wall Brown had scaled; he went for help.  Brown died from a single gunshot wound which perforated the aorta, causing him to bleed to death.

"At this point, Mirna, defendant and Gabriel met and attempted to leave the neighborhood.  Approximately 30 minutes later, Mirna saw defendant trying to hide a gun in the bushes in front of a house near some railroad tracks.  When the trio

reached the tracks, Gabriel said he shot someone once to scare him; he said he should have shot the man in the head instead.

"Defendant was arrested on April 14, 1992. As he was escorted to the police vehicle, he said, 'The white boy shouldn't have tried to be a hero.' He also said he had 'pulled lots of jobs,' and 'when I pull them, I pull them clean;' he was not going to jail, for he 'was going to take care of the guy that said he shot the white guy.' During a subsequent police interview, defendant admitted telling Gabriel, 'Shoot him.' He also said Gabriel was very nervous; he did not want to give him the gun because Gabriel might shoot someone with it. After he initially told Gabriel to shoot in the air if they were pursued, Gabriel said he would just shoot the pursuer." (*Murillo*, *supra*, B078813.)

The opinion went on to summarize the defense evidence:

"Defendant admitted his complicity in the burglary. He acknowledged he belonged to the South Side Reseda street gang. According to defendant, when the group planned the burglary, he was unarmed. Someone gave him a handgun as protection should they encounter rival gang members. Defendant had shot at rival gang members on at least one prior occasion, but he did not intend to use the gun during the burglary.

"As the group drove around looking for the best store to burgle, Gabriel asked defendant what to do if someone pursued them. Defendant said he would shoot in the air. As they left one store they had investigated, Gabriel asked for the gun. Defendant refused to give it to him, explaining he did not want his fellow gang members 'to say we gave you the gun, why did you lose it.' Gabriel repeated his request for the gun often enough that defendant grew tired of the debate and gave him the gun. He said nothing further about how the gun should be used.

5

"As the group fled after stealing the beer, Brown pursued them. When Brown drew near after they had scaled a wall and entered a yard, defendant told Gabriel to shoot. He thought Gabriel would shoot in the air. After Gabriel fired, defendant did not believe anyone had been shot. Gabriel later said he shot only to scare his pursuer.

"Defendant learned someone had been shot during the pursuit after overhearing a conversation on the following evening. When defendant was arrested, he was angry at being accused of the shooting and at Gabriel for 'snitching.' According to defendant, he never said anything at the time of his arrest about Brown trying to be a hero." (*Murillo*, *supra*, B078813.)

A jury convicted Murillo of first degree murder (§ 187) and found true a felony murder special circumstance. (§ 190.2, subd. (a)(17).) The jury also convicted him of one count of burglary (§ 459) and found true an allegation that a principal was armed in the commission of both the murder and the burglary. (§ 12022, subd. (a)(1).) The trial court sentenced Murillo on the murder count to life in prison without the possibility of parole. The court suspended the sentence for the burglary pursuant to section 654.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine. Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he: actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or "was a major participant in the underlying felony and acted with

6

reckless indifference to human life." (§ 189, subd. (e)(3); *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.) The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder because of the new law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

Murillo filed a petition for resentencing on March 29, 2019. The trial court summarily denied the petition on the ground that the jury's special circumstance finding rendered him ineligible for resentencing. (See §§ 189, subd. (e)(3), 1170.95, subd. (a)(3).) The court also denied the petition on the ground that Senate Bill No. 1437 violates several provisions of the California Constitution.[3]

## DISCUSSION

### A. Background on Section 1170.95

Section 1170.95 allows a defendant serving a sentence for felony murder who would not be guilty of murder because of the new law to petition for resentencing. The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility: (1) He was charged with murder in a manner "that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine" (§ 1170.95, subd. (a)(1)); (2) He "was convicted of" or pleaded guilty to "first degree or second degree murder" (§ 1170.95, subd. (a)(2)); and (3) He "could not be

---

[3] We agree with Murillo and the Attorney General that the trial court erred by finding Senate Bill No. 1437 unconstitutional. (See *People v. Lamoureux*, *supra*, 42 Cal.App.5th at pp. 250–266.)

convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective" as a part of Senate Bill No. 1437 (§ 1170.95, subd. (a)(3)).  As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have been at least a major participant in the underlying felony and have acted with reckless indifference to human life.

Upon receipt of a petition, the trial court reviews it to determine whether the petitioner has made a prima facie case for relief.  (§ 1170.95, subd. (c).)  If the petitioner meets this requirement, the court issues an order to show cause and holds a hearing to determine whether to vacate the murder conviction.  (§ 1170.95, subd. (d)(1).)  At this final stage of the proceeding, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

In this case, the trial court denied Murillo's petition at the first stage of prima facie review under section 1170.95, subdivision (c).  A denial at that stage is appropriate only if the record of conviction demonstrates that "the petitioner is ineligible for relief as a matter of law." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329 (*Verdugo*), review granted Mar. 18, 2020, S260493; accord, *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, fn. 10, review granted Mar. 18, 2020, S260598 (*Lewis*).) This is a purely legal conclusion, which we review de novo.  (See *Verdugo*, *supra*, at p. 328, fn. 8.)

**B.**    **The Proper Procedure for Challenging a Felony-murder Special Circumstance is a Habeas Petition**

The primary obstacle preventing Murillo from establishing his eligibility for resentencing is the jury's finding of a felony-murder special circumstance.  To be eligible for resentencing under section 1170.95, Murillo must show that he "could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective" as a part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)  Under the newly amended version of section 189, a defendant can be convicted of felony murder only if he was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e)(3).)  These are identical to the circumstances in which a felony-murder special circumstance applies.  (See § 190.2, subds. (b)–(d).)  Thus, the jury's special circumstance finding shows as a matter of law that Murillo could still be convicted of felony murder under the new definition, and prevents Murillo from making a prima facie case that he is eligible for resentencing.

Murillo attempts to avoid this conclusion by attacking the felony-murder special circumstance finding.  He notes that after his conviction of felony murder, the Supreme Court decided *Banks* and *Clark*, which decisions represent a significant shift in the interpretation of the concepts of major participation and

9

reckless indifference to human life.[4] Because no court has examined whether Murillo was a major participant who acted with reckless indifference to human life according to the standards enunciated in *Banks* and *Clark*, Murillo argues that the prior special circumstance finding does not show as a matter of law that he is ineligible for resentencing under section 1170.95.

The Attorney General argues, however, that in order to challenge the validity of a felony-murder special circumstance by collateral attack, a defendant must file a petition for a writ of habeas corpus.[5] A defendant may not seek relief via section 1170.95. We agreed with this position in our recent opinion in *Galvan*, *supra*, 52 Cal.App.5th at page 1142, and we do so again here.

As we explained in *Galvan*, a defendant subject to a pre-*Banks* and *Clark* special circumstance is ineligible for resentencing under section 1170.95 because of the basis of his claim. Although Murillo asserts that he could not now be convicted of murder, "the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstance finding in *Banks* and *Clark*.

---

[4] We describe the *Banks* and *Clark* decisions in more detail later in this opinion. (See Discussion part C, *post*.)

[5] Because *Banks* and *Clark* represent a significant clarification in a legal standard, a defendant whose special circumstance determination predated *Banks* and *Clark* may challenge the validity of the finding by means of a habeas corpus petition, even though sufficiency of the evidence claims are generally not cognizable on habeas corpus review. (See *In re Scoggins* (2020) 9 Cal.5th 667, 673–674.)

10

Nothing about those requirements changed as a result of Senate Bill No. 1437. Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life. If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Galvan*, *supra*, 52 Cal.App.5th at p. 1142.)

By requiring a defendant to seek relief via habeas corpus, we avoid creating a disparity in which similarly situated defendants' cases are evaluated under different standards based solely on the date of their convictions. "Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding. If the judgment is affirmed, generally it would be the law of the case in any proceedings thereafter as to those findings. (*In re Saldana* (1997) 57 Cal.App.4th 620, 625 . . . ; see also *In re Harris* (1993) 5 Cal.4th 813, 829 . . . ['in the absence of strong justification, any issue that was *actually* raised and rejected on appeal cannot be renewed in a petition for a writ of habeas corpus'].) But where, as here, a defendant was convicted before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt. (See *People v. Gomez* (2020) 52 Cal.App.5th 1, 17.) Yet nothing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such

11

similarly situated defendants." (*Galvan, supra,* 52 Cal.App.5th at p. 1143.)

### C. As a Matter of Law, the Special Circumstance as Defined by *Banks* and *Clark* Applies to Murillo

We also affirm the trial court's denial of Murillo's petition on a second, independent ground. Even if a defendant could challenge the validity of a felony-murder special circumstance by means of a petition under section 1170.95, Murillo's claim would still fail because the record of conviction establishes as a matter of law that the jury's special circumstance finding is valid under the standards established by *Banks* and *Clark*.

### 1. The background of *Banks* and *Clark*

The definition of the felony-murder special circumstance under section 190.2, subdivision (d) is the product of the United States Supreme Court's jurisprudence on the constitutionality of the death penalty in cases of felony murder. In *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*), the Court considered whether a defendant who did not personally kill the victim could be sentenced to death for felony murder. The Court held that if a defendant was a major participant in the underlying felony and acted with reckless indifference to human life, then the Eighth Amendment does not prohibit the imposition of the death penalty as disproportionate. (*Tison, supra,* at p. 158.) In 1990, the electorate enacted section 190.2 by initiative, adopting the *Tison* standard for the felony-murder special circumstance in California. (See *In re Scoggins, supra,* 9 Cal.5th at pp. 674–675.)

Because section 190.2 incorporates the standard established in *Tison*, California courts have looked to *Tison* for guidance in defining the concepts of major participation and reckless indifference to human life. (See *In re Scoggins*, *supra*, 9 Cal.5th at p. 675; *Banks*, *supra*, 61 Cal.4th at p. 798.) In particular, the California Supreme Court has viewed *Tison* and a prior case, *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*), as "represent[ing] points on a continuum." (*Banks*, *supra*, 61 Cal.4th at p. 802.) The defendants in *Tison* were sufficiently culpable to justify the application of the death penalty, but the defendant in *Enmund* was not. "Somewhere between them, at conduct less egregious than the Tisons' but more culpable than . . . Enmund's, lies the constitutional minimum for death eligibility."[6] (*Ibid.*)

In *Enmund*, the defendant and two confederates planned to rob an elderly couple at their home. When the couple resisted, one or both of Enmund's cohorts shot and killed the couple. Enmund, who was waiting in a car nearby, drove his cohorts away and helped them dispose of the murder weapons. (*Enmund*, *supra*, 458 U.S. at p. 784.) The Court held that the imposition of the death penalty was unconstitutionally disproportional as a punishment to Enmund, who had not intended for a killing to take place and was not at the scene at the time of the murders. (*Id.* at p. 798.)

By contrast, the Court did not reverse the imposition of the death penalty in *Tison*. The defendants in that case, three

---

[6] The analysis is the same in cases like this one in which the death penalty is not at stake. Regardless of the punishment, the question is whether the defendant's conduct meets the relevant standard. (See *Banks*, *supra*, 61 Cal.4th at p. 804.)

brothers, "assembled a large arsenal of weapons" to break their father and another inmate, both convicted murderers, out of prison.  (*Tison*, *supra*, 481 U.S. at p. 139.)  "The brothers armed the two prisoners, locked up the prison guards, and helped the prisoners escape.  (*Ibid.*)  A few days later, the group got a flat tire and flagged down a passing car for help.  (*Id.* at pp. 139–140.)  They kidnapped the family that was in the car and robbed them.  (*Id.* at p. 140.)  The two brothers then guarded the family while their father considered what to do next.  (*Ibid.*)  Eventually, the father shot all of the family members, and the group of perpetrators left the victims to die without rendering aid.  (*Id.* at p. 141.)"  (*In re Scoggins*, *supra*, 9 Cal.5th at p. 675.)

To assist in distinguishing points along the continuum between *Enmund* and *Tison*, the Court in *Banks* set out a series of considerations relevant to determining whether a particular defendant was a major participant in the underlying felony.  These factors are as follows:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?  No one of these considerations is necessary, nor is any one of them necessarily sufficient."  (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

The defendant in *Banks* was a getaway driver in an armed robbery of a marijuana dispensary. (*Banks*, *supra*, 61 Cal.4th at pp. 804–805.) The Court held that there was insufficient evidence that he was a major participant in the robbery, noting that he was not present at the scene when a cohort shot and killed a guard at the dispensary, and might not have been able even to see or hear the shooting. (*Id.* at p. 805.) In addition, there was no evidence that he procured the weapons or that his confederates had a history of committing murder or other violent crimes. (*Ibid.*)

In *Clark*, the Court re-examined *Tison*, this time considering in particular the second requirement for the special circumstance, reckless indifference to human life. Once again, the Court established a list of factors useful to determining whether a defendant met the standard for liability. Because the issue of reckless indifference to human life overlaps significantly with major participation in the underlying felony, the relevant factors are similar to those stated in *Banks*. (See *Clark*, *supra*, 63 Cal.4th at pp. 614–615.) The factors identified in *Clark* are: (1) The defendant's knowledge of weapons, the number of weapons used, and the defendant's own use of weapons; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge that his cohort was likely to kill; and (5) whether the defendant made efforts to minimize the risk of violence during the felony. (*Id.* at pp. 618–622.) Just as in *Banks*, the Court in *Clark* clarified that these considerations are not exhaustive, sufficient, nor necessary to establishing whether the defendant's conduct met the standard for the special circumstance. (*Id.* at p. 618.)

15

The Court in *Clark* applied these factors and concluded that there was insufficient evidence to show that the defendant acted with reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at p. 623.) The defendant was the principal planner of a robbery of a CompUSA store. The plan was to wait until the store was closed, and then to handcuff the staff in the store's bathroom and load store merchandise into a van. (*Id.* at p. 620.) The mother of a store employee came into the store looking for her son, surprising one of the defendant's confederates, who shot and killed her. (*Id.* at p. 539.) Several factors contributed to the Court's conclusion that the defendant did not act with reckless indifference to human life. Most notably, the defendant was not present at the time of the shooting, and he had planned the robbery in a way that would minimize the risk of violence. He scheduled the robbery after the store closed, when fewer people were likely to be present, and expected the group to use only one gun, which was loaded with only a single bullet. (*Id.* at pp. 621–622.)

### 2. Application to this case

Although many of the *Banks* and *Clark* factors are relevant, a single fact is overwhelmingly important in this case, and almost alone establishes that Murillo was a major participant who acted with reckless indifference to human life: Murillo instructed Gabriel to fire the gun. Even if we assume that Murillo was telling the truth when he claimed that he did not mean for Gabriel to shoot at Brown, Murillo's actions led directly to Brown's death. This is a key factor making him a major participant under *Banks*. In addition, by instructing Gabriel to shoot, Murillo maximized the risk of violence in the crime rather than minimizing it: rather than attempting to

restrain Gabriel, he turned him loose. These are both crucial factors in establishing that Murillo acted with reckless indifference to human life.

Other factors also support the conclusion that Murillo was a major participant in the burglary and that he acted with reckless indifference to human life. Murillo knew that Gabriel was young and inexperienced with firearms, and he told police that Gabriel seemed nervous. Yet, in spite of these concerns, Murillo allowed Gabriel to carry the gun during the burglary. Murillo could have minimized the inherent risk in the burglary simply by ordering Gabriel to leave the gun in the car. Instead, Murillo significantly increased the danger by giving Gabriel the gun to carry into the store.

The only mitigating factor is that the original plan did not require the perpetrators to use a gun or shoot anyone. But this is vastly less important than the other factors described above.

In *Banks* and *Clark*, and in other cases in which a court has overturned a special circumstance finding, the defendant either was not present at the scene of the killing, or at least was not capable of preventing his cohort from acting. (See *Banks*, *supra*, 61 Cal.4th at p. 805; *Clark*, *supra*, 63 Cal.4th at pp. 619-620; accord, *In re Taylor* (2019) 34 Cal.App.5th 543, 559; *In re Ramirez* (2019) 32 Cal.App.5th 384, 404; *In re Miller* (2017) 14 Cal.App.5th 960, 975.) We are not aware of any case where a court overturned a special circumstance finding in which the defendant was present and bore such a strong responsibility for the victim's death.

In *People v. Smith* (2020) 49 Cal.App.5th 85, 95–96 (*Smith*), our colleagues in Division 5 of this district held that a defendant could challenge a pre-*Banks* and *Clark* special circumstance

17

finding in a petition under section 1170.95. The court also held that it was inappropriate to determine at the first stage of review under section 1170.95 whether the defendant met the standard for a special circumstance under *Banks* and *Clark* because at the final eligibility hearing, a petitioner has the opportunity to introduce new or additional evidence regarding his eligibility for resentencing. (See § 1170.95, subd. (d)(3).) The court in *Smith* held that, because a trial court cannot know what evidence a petitioner may submit, it cannot at the first stage of review determine that a petitioner was a major participant who acted with reckless indifference to human life. (*Smith, supra,* 49 Cal.App.5th at p. 95.)

We have already explained that a petition under section 1170.95 cannot be used to challenge a felony-murder special circumstance finding. Even if we assume that such a challenge can be asserted in a section 1170.95 petition, we disagree with *Smith* regarding the standard for evaluating the evidence to determine whether a defendant has made a prima facie showing of eligibility under that section. If as a matter of law the record of conviction shows, as it does here and did in *Smith*, that the defendant was a major participant who acted with reckless indifference to human life, and the defendant does not claim he has new evidence to present, he has not made a prima facie case. This view is consistent with existing case law construing section 1170.95, including *Lewis, supra,* 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 and *Verdugo, supra,* 44 Cal.App.5th 320, review granted March 18, 2020, S260493.

Here, the record of conviction establishes as a matter of law that Murillo was a major participant who acted with reckless

18

indifference to human life, as those terms were clarified in *Banks* and *Clark*, and Murillo does not claim to have any new evidence on this issue. Therefore, even if his claim was cognizable under section 1170.95, he was not eligible for relief under that statute.

## DISPOSITION

The trial court's order is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


SINANIAN, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.