Filed 12/17/20  P. v. Barillas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JOSE HUMBERTO BARILLAS,<br><br>　　Defendant and Appellant. | H045024<br>(Santa Clara County<br>Super. Ct. No. C1633774) |

Defendant Jose Barillas appeals after a jury convicted him of multiple crimes for sexually abusing a child.  Defendant contends the trial court erred by admitting expert testimony on Child Sexual Abuse Accommodation Syndrome and that defense counsel was ineffective for not objecting to certain aspects of that testimony.  We reject those contentions.  Defendant also contends there is insufficient evidence of bodily fluid transfer to support the trial court's order that he submit to AIDS testing.  We accept the Attorney General's concession on that point and will remand the case for the sole purpose of determining whether there is a proper basis to order AIDS testing.

## I.  BACKGROUND

Jane Doe, age 17 at the time of trial, testified that defendant sexually abused her for years, beginning when she was around eight.  Doe came from Mexico to the United States when she was six and lived with her mother, who was in a relationship with defendant.  They lived with defendant at his house and he occupied a stepfather role for Doe.

Doe recalled defendant reaching under a bed where she was hiding during a game of hide-and-seek and touching her vagina; the abuse escalated after that. He would rub between her legs with his hands and remove her clothing to touch her breasts. Sometimes he would masturbate in front of her, inches away from her face. Doe estimated the abuse happened every day for several years. It began when she was eight and continued until she was 12.

Doe said she wanted to tell someone about it at the time but did not know how. When she was 15, she did tell someone, a boy she was dating. He urged her to report it. Doe told her brother, who in turn told their mother. The mother called defendant and confronted him. He asked her not to call the police and offered her money. Later, defendant left a string of distraught voicemails for Doe's mother, begging her not to tell police and pleading for forgiveness. He said his touching of Doe had been an accident.

The prosecution called an expert witness, psychologist Anthony Urquiza, to testify about Child Sexual Abuse Accommodation Syndrome (CSAAS). He explained he had no knowledge of the facts in this case and that CSAAS is not intended to determine whether a child has in fact been abused. Rather, it is a method of educating therapists about the dynamics of child sexual abuse and the way abused children may act. According to Urquiza, abused children may not initially disclose the abuse and when they do, the disclosure may be vague and piecemeal. A child may reveal additional details over time. And it is common for abused children to feel helpless to stop the abuse because the abuser is often someone with whom they have an ongoing relationship. Urquiza also testified about studies that show between one and six percent of child sex abuse cases involve false allegations and based on those studies, he believes false allegations of abuse happen infrequently.

Defendant testified and denied ever touching Doe in a sexual manner. He explained he sounded the way he did in the voicemails only because he was afraid of the police. Defendant said Doe's mother had asked for his help in getting immigration

documents and a friend of his testified that Doe's mother once said she wanted to marry defendant to "have the benefits of getting her papers." The defense theory was that Doe fabricated the abuse allegations to obtain favorable treatment in the immigration process for herself and her mother.

The jury convicted defendant on all counts: one count of continuous sexual abuse of a child under 14 (Pen. Code, § 288.5) and ten counts of committing a lewd act by force on a child under 14 (Pen. Code, § 288, subd. (b)(1)). The trial court sentenced defendant to 80 years in prison, imposed various fines and fees, and ordered him to submit to AIDS testing under Penal Code section 1202.1.

## II.    DISCUSSION

### A.    ADMISSIBILITY OF EXPERT TESTIMONY ON CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME GENERALLY

Defendant contends the trial court erred by admitting expert testimony regarding CSAAS. We review admissibility decisions for abuse of discretion, reversing only where the trial court acted clearly outside the applicable legal standard. (*People v. Wells* (2004) 118 Cal.App.4th 179, 186.)

CSAAS testimony has long been admissible for the limited purpose of rehabilitating a complaining witness after a defense assertion that he or she behaved inconsistently with having been abused. (See *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300.) The testimony is admissible to correct common misconceptions about abuse and to explain victim behavior (not initially reporting the abuse, for instance). (*Id*. at p. 1301.) Such evidence must be handled carefully by the trial court to ensure it does not go beyond the limited purpose for which it is allowed. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744.) The court may admit the testimony "if the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation." (*Id*. at p. 1745.) But the testimony must be tailored to rebut an identified behavioral misconception, and the jury must be instructed that the testimony

3

may not be used to determine whether the complaining witness's claims are true. (*People v. Bowker* (1988) 203 Cal.App.3d 385, 394.)

Applying those standards here, we see no abuse of discretion in the admission of expert testimony on CSAAS. Doe's credibility was challenged based on conduct that could be seen as inconsistent with her claims: she did not tell anyone about the abuse for several years, and she continued to voluntarily interact with defendant after he began abusing her. The expert testified that he was not commenting on the facts of this case, he could not predict whether a particular child had in fact been abused, and determining whether Doe's accusations were true was solely up to the jury. The trial court admonished the jury repeatedly (during the expert's testimony, in its instructions, and again during closing argument) that the testimony was admitted for a limited purpose and could not be used to determine whether Doe's claims were true.[1] The testimony was properly admitted for the limited purpose of defending Doe's credibility after attacks based on her delayed reporting and her post-abuse interaction with defendant. The trial court handled its admission with the requisite care to prevent the jury from using the testimony improperly.

Defendant argues that CSAAS testimony is inadmissible because it invades the jury's responsibility to determine witness credibility and is based on flawed science.

---

[1] As one example, shortly after the expert began testifying, the court interrupted: "Before you go further, ladies and gentlemen, this witness has been brought forward to discuss with you the child Sexual Abuse Accommodation Syndrome. He and none of the persons who are experts in this area are permitted to give you their opinion about whether or not [Jane Doe] had been sexually assaulted. In fact, they rarely know anything about the case. [¶] What they have to say doesn't have much to do with our case. They – these witnesses and, particularly, Dr. Urquiza for this region is called by both the [prosecution] and the defense in cases where there [are] allegations of sexual abuse for the purpose of dispelling myths or beliefs that jurors may have brought with them to this trial so you can understand the dynamics. [¶] So I am going to read you an instruction which you're going to get at the end of the trial and I would like to give it now so you can wrap your heads around why [ ] Dr. Urquiza is here. Okay?"

Citing a New Jersey Supreme Court case that found the technique not scientifically valid (*State v. J.L.G.* (N.J. 2018) 190 A.3d 442), as well as other out of state authorities deeming it inadmissible, defendant urges us not to engage in "blind acceptance" of the technique's validity "based on scientifically untested ideas developed 35 years ago." But given the California Supreme Court's expressed view (in *People v. McAlpin*, *supra*, 53 Cal.3d 1289, 1300) that Child Sexual Abuse Accommodation Syndrome evidence is admissible for the limited purpose for which it was admitted here, we are precluded from deciding otherwise. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see also *People v. Munch* (2020) 52 Cal.App.5th 464, 468 [that other states may disagree with the Supreme Court's decision does not change its status in California cases].) Even if we were free to decide that Child Sexual Abuse Accommodation Syndrome is a flawed method, we would have no basis for reaching that conclusion on this record. The purported flaws in Child Sexual Abuse Accommodation Syndrome that defendant identifies—that the underlying technique is unreliable and that particular misconceptions about abuse victim behavior are no longer held by most jurors—have no support here. Unlike in the New Jersey case on which defendant relies, he did not call his own expert to rebut Urquiza's testimony nor did he introduce any other evidence on the subject. (See *State v. J.L.G.*, *supra*, 234 N.J. 265, 272 ["To better assess defendant's [CSAAS] claim, we remanded the matter for a hearing before the trial court. Four experts testified at the hearing, and the parties introduced and discussed numerous scientific studies. [¶] We rely heavily on the record developed at the hearing."].)

**B.  ADMISSIBILITY OF CSAAS STATISTICAL TESTIMONY**

Defendant contends the expert's testimony that false allegations of abuse are statistically infrequent was inadmissible. Because there was no objection to that testimony, a challenge to its admissibility is forfeited. (*People v. Bryant, Smith and*

5

*Wheeler* (2014) 60 Cal.4th 335, 413.) Defendant therefore alternatively argues his counsel was constitutionally ineffective for not objecting.

We agree it was improper for the expert to testify about studies concluding between one and six percent of abuse allegations are false and to opine that false allegations are rare. Such testimony is inadmissible because whether most sexual abuse allegations are truthful is not relevant to prove the allegations in this case. (Evid. Code, § 210 [Relevant evidence is evidence having "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."].) Since the time of trial in this matter, two cases have held statistical false allegation evidence is improper. (*People v. Wilson* (2019) 33 Cal.App.5th 559, 568; *People v. Julian* (2019) 34 Cal.App.5th 878, 885.) We agree with the reasoning expressed in those opinions. Prosecutors therefore must take care not to elicit such testimony from CSAAS experts. (*People v. Smithey* (1999) 20 Cal.4th 936, 960 [it is misconduct for a prosecutor to intentionally elicit inadmissible testimony].)

Our task in this posture, however, is to decide whether defense counsel was constitutionally ineffective for failing to object to the statistical testimony. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell short of what is considered reasonable under professional norms, as well as a reasonable probability counsel's deficient performance affected the outcome. (*In re Harris* (1993) 5 Cal.4th 813, 833.) That burden is "difficult to carry on direct appeal," because the record on appeal must affirmatively disclose that counsel had no rational tactical purpose for the act or omission. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 594.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.) Claims of ineffectiveness based on failure to object to evidence pose a particular

6

challenge for a defendant because whether to object is a tactical decision and in "the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings." (*People v. Riel* (2000) 22 Cal.4th 1153, 1197.) "Competent counsel may forgo even a valid objection for tactical reasons." (*People v. Campbell*, *supra*, 51 Cal.App.5th 463, 506.)

Here, the lack of objection suggests a calculated tactical decision by defense counsel rather than inadvertence. Counsel anticipated the statistical testimony but instead of objecting chose to vigorously cross-examine the expert to undermine the reliability of his opinions. Counsel asked questions like these, which displayed familiarity with the referenced studies: "Q: [] A few moments ago you said that the best study, a Canadian study that had been done on this subject of false allegations was one in which all of the allegations came from people other than the children? [¶]…[¶] Q: Why would you consider that to be the best study of false allegations if it came from other people as opposed to the subject of the actual allegation? [¶]…[¶ Q: Okay. Can you—obviously, you have a lot of background and experience with this. Can you give me one example out of all of these 15 studies that you talked about, one example where the determination was made that the child complaining witness, the person is alleged to have been abused, it was determined that that person was not telling the truth about what they were—they originally had said?"

The record reflects counsel made a tactical decision to cross-examine on the subject rather than objecting to the direct testimony. Questioning the wisdom of that decision with the benefit of hindsight cannot establish ineffective assistance, nor can the fact that another attorney may well have decided to object to the evidence. "No single right way exists to try a case." (*People v. Riel*, *supra*, 22 Cal.4th 1153, 1177.)

Defendant must also show a reasonable probability of a more favorable result had the jury not heard the testimony regarding the frequency of false allegations. In contrast to *People v. Julian*, *supra*, 34 Cal.App.5th 878, 885, where prejudice was found when

7

child witnesses gave conflicting accounts of abuse, Doe's testimony about what happened was clear and consistent. The credibility of her testimony was also bolstered by specifics—at one point, in recounting how defendant masturbated in front of her, she provided a detailed description of his penis. And the jury heard defendant's distraught voicemails, saying the touching was an accident and offering money to Doe's mother. In light of the entire record, we are not persuaded of a different outcome had the jury not heard expert testimony about the statistical frequency of false allegations.

## C. AIDS TESTING

Penal Code section 1202.1, subdivision (e)(6) requires persons convicted of certain sexual offenses, including those for which defendant was convicted, to submit to AIDS testing "if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim." At sentencing, the trial court ordered AIDS testing without making any express probable cause finding. Defendant contends there is insufficient evidence of a possible fluid transfer capable of transmitting HIV. The Attorney General concedes the record is insufficient to show probable cause, and we accept the concession. The appropriate disposition is to remand to the trial court for further proceedings to determine whether the prosecution has additional evidence that would establish probable cause. (See *People v. Butler* (2003) 31 Cal.4th 1119, 1129.)

## III. DISPOSITION

The judgment is reversed and the matter is remanded for the trial court to determine whether there is probable cause to order AIDS testing under Penal Code section 1202.1, subdivision (e)(6). This disposition does not affect defendant's convictions. If the court finds probable cause, it shall reinstate defendant's original sentence. If the court finds there is insufficient evidence to order AIDS testing, it shall

strike the order requiring such testing and otherwise reinstate defendant's original sentence.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Bamattre-Manoukian, J.

**H045024 -** *The People v. Barillas*